[No. F022384. Fifth Dist. Mar. 15, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES EDWARD COOPER, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts 1, 2, 3, and 4 of the Discussion.

818

**COUNSEL**

Wesley A. Van Winkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Harry Joseph Colombo and R. Todd Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THAXTER, J.**—Appellant James Edward Cooper is a third strike offender under the "three strikes" legislation (Pen. Code, § 667, subds. (b)-(i)).[1] A jury convicted him of being an ex-felon in possession of a handgun (§ 12021, subd. (a)) and found to be true allegations he had previous convictions for robbery in 1977 and 1982 within the meaning of section 667, subdivisions (d) and (e). The trial court sentenced appellant to a term of 25 years to life. Appellant challenges the constitutionality and application of the three strikes legislation.

In the published portion of this opinion, we hold the three strikes legislation does not provide for cruel and unusual punishment, nor does it result in a deprivation of equal protection for "third strike" defendants. In the unpublished portion we reject appellant's other challenges. Accordingly, we affirm.

### FACTS

On May 25, 1994, employees of a supermarket detained appellant when he shoplifted a can of cake frosting. Appellant offered to pay for the frosting, but a cashier told him it was "too late." Appellant displayed a handgun and said, "Don't make me do this just for a can of frosting." The cashier told appellant to "just go." Appellant left the store and was arrested a short time later.

Appellant testified he did not intend to steal the frosting, he simply forgot to pay for it. He denied having a gun. He admitted committing robberies in San Francisco in 1977 and 1982.

The jury found appellant not guilty of theft but guilty of being an ex-felon in possession of a firearm.

### DISCUSSION

1.-4.*

. . . . . . . . . . . . . . . . . . . . . .

---

[1]All statutory references are to the Penal Code unless otherwise indicated.
*See footnote, *ante*, page 815.

*5. Neither the three strikes law itself nor the sentence imposed in this case constitutes cruel or unusual punishment.*

 Appellant contends it is cruel, unusual, and disproportionate to impose a 25-year-to-life term on an ex-felon for mere possession of a firearm.

*Federal Standard*

The Eighth Amendment prohibits the infliction of "cruel and unusual punishment." In arguing that his sentence violates the Eighth Amendment, appellant relies on *Solem* v. *Helm* (1983) 463 U.S. 277 [77 L.Ed.2d 637, 103 S.Ct. 3001]. In *Solem*, a bare majority of the court held that a sentence of life without the possibility of parole was unconstitutionally disproportionate as applied to defendant on his seventh conviction of a nonviolent felony. The court stated, "[A]s a matter of principle . . . a criminal sentence must be proportionate to the crime for which the defendant has been convicted. Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals. But no penalty is *per se* constitutional. As the Court noted in *Robinson* v. *California* [(1962)] 370 U.S. [660], at 667 [8 L.Ed.2d 758, 763, 82 S.Ct. 1417], a single day in prison may be unconstitutional in some circumstances." (*Id.* at p. 290 [77 L.Ed.2d at p. 649], fn. omitted.)

The court concluded, "[A] court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." (*Solem* v. *Helm, supra,* 463 U.S. at p. 292 [77 L.Ed.2d at p. 650].)

The holding of *Solem,* however, was weakened substantially by *Harmelin* v. *Michigan* (1991) 501 U.S. 957 [115 L.Ed.2d 836, 111 S.Ct. 2680]. There, Harmelin was convicted of possessing 672 grams of cocaine and sentenced to a mandatory life term without parole under a Michigan statute that required such punishment for possession of more than 650 grams of specified controlled substances. He argued that the sentence violated the Eighth Amendment because it was disproportionate to the crime, and because the sentencing scheme precluded consideration of mitigating factors. A sharply divided court upheld the Michigan statute and the punishment imposed.

Examining the historical antecedents to the Eighth Amendment's cruel and unusual punishment clause, the plurality opinion (opn. by Scalia, J.,

joined by Rehnquist, C. J.) concluded that the framers of the amendment deliberately excluded proportionality as a factor. "While there are relatively clear historical guidelines and accepted practices that enable judges to determine which *modes* of punishment are 'cruel and unusual,' *proportionality* does not lend itself to such analysis." Thus, "*Solem* was simply wrong; the Eighth Amendment contains no proportionality guarantee." (*Harmelin* v. *Michigan, supra,* 501 U.S. at pp. 985, 965 [115 L.Ed.2d at pp. 858, 846].) The plurality stated that application of the three factors that *Solem* found relevant to the proportionality determination is "an invitation to imposition of subjective values." (*Id.* at p. 986 [115 L.Ed.2d at p. 859].)

The plurality explained why the three factors were unhelpful to the determination of whether a punishment was cruel and unusual. As to the first factor, the gravity of the offense, there are some offenses, involving violent harm to human beings, that are always and everywhere regarded as serious. However, there is "enormous variation" among the jurisdictions as to what else should be regarded to be as serious. For example, Massachusetts punishes sodomy more severely than assault and battery, whereas in other states, sodomy is not unlawful. In Louisiana, one who assaults another with a dangerous weapon faces the same maximum prison term as one who removes a shopping basket from the grounds of a store without authorization. The First Congress punished the cutting off of ears, tongue, or limbs with the intent to maim with a prison term of up to seven years but provided the death penalty for running away with a ship or vessel. Today, Congress punishes assault by wounding with up to six months in prison, unauthorized reproduction of the "Smokey Bear" character with the same penalty, offering to barter a migratory bird with up to two years in prison, and stealing a Post Office Department key with a prison term of up to 10 years. (*Harmelin* v. *Michigan, supra,* 501 U.S. at pp. 987-988 [115 L.Ed.2d at p. 860].)

The plurality opinion found application of the second factor suggested in *Solem* unhelpful for the same reason. One cannot compare the sentences imposed by the jurisdiction for "similarly grave" offenses because there is no objective standard of gravity. Judges would be comparing what *they* consider comparable. (*Harmelin* v. *Michigan, supra,* 501 U.S. at p. 988 [115 L.Ed.2d at p. 860].) In addition, there are justifications for punishing "similarly grave" crimes differently. Since deterrent effect depends not only on the harshness of the penalty but on its certainty, crimes that are less grave but more difficult to detect may warrant substantially higher penalties. On the other hand, grave crimes of the sort that will not be deterred by penalty may warrant substantially lower penalties, as may grave crimes of the sort that are normally committed once in a lifetime by otherwise law-abiding citizens who will not profit from rehabilitation. Whether these differences

occur depends on the weight society accords to deterrence and rehabilitation, rather than retribution, as the objective of criminal punishment. This is "an eminently legislative judgment." (*Id.* at p. 989 [115 L.Ed.2d at p. 861].) Further, "[p]roportionality is inherently a retributive concept, and perfect proportionality is the talionic law," an eye for an eye. (*Ibid.*)

Regarding the third *Solem* factor, the plurality opinion stated that the sentence imposed in other jurisdictions for the same crime could be applied with ease, but it had no relevance to the Eighth Amendment. "That a State is entitled to treat with stern disapproval an act that other States punish with the mildest of sanctions follows *a fortiori* from the undoubted fact that a State may criminalize an act that other States do not criminalize *at all.*" (*Harmelin* v. *Michigan, supra,* 501 U.S. at p. 989 [115 L.Ed.2d at p. 861].) Thus, absent a constitutionally imposed uniformity, some states will always treat particular offenders more severely than any other state. But, diversity is the "very *raison d'être*" of our federal system. The different needs and concerns of the states may induce them to treat similar acts leniently or harshly. "The Eighth Amendment is not a ratchet, whereby a temporary consensus on leniency for a particular crime fixes a permanent constitutional maximum, disabling the States from giving effect to altered beliefs and responding to changed social conditions." (*Id.* at p. 990 [115 L.Ed.2d at pp. 861-862].)

Justice Kennedy, joined by Justices O'Connor and Souter, concurred in the judgment reached by the plurality but on different grounds. They concluded the cruel and unusual punishments clause encompassed "a narrow proportionality principle." (501 U.S. at p. 997 [115 L.Ed.2d at p. 866].) They identified four principles commonly used to limit proportionality review. First, the fixing of prison terms for specific crimes involves a substantive penological judgment that is within the province of legislatures, not the courts. Consequently, the courts must give substantial deference to the broad authority that legislatures necessarily possess in determining the punishments for crimes. (*Id.* at p. 998 [115 L.Ed.2d at pp. 866-867].) Second, the Eighth Amendment does not mandate adoption of any one penological theory. Federal and state criminal systems may accord different weights at different times to the goals of retribution, deterrence, incapacitation and rehabilitation. (501 U.S. at p. 999 [115 L.Ed.2d at pp. 867-868].) Third, marked divergence in underlying theories of sentencing and in the length of prescribed prison terms is the inevitable, and often beneficial, result of the federal structure. State sentencing schemes may embody different penological assumptions, making interstate comparison of sentences difficult. Thus, that a state has the most severe punishment for a particular crime does not by

itself render the punishment grossly disproportionate. (*Harmelin* v. *Michigan, supra*, 501 U.S. at p. 1000 [115 L.Ed.2d at p. 868].) Fourth, proportionality review should be guided by objective factors to the extent possible. The most prominent objective factor being the type of punishment imposed—e.g., capital punishment and noncapital punishment. Courts lack any clear objective standards to distinguish between sentences for different terms of years. (*Id.* at pp. 1000-1001 [115 L.Ed.2d at pp. 868-869].) Based on these factors, the concurring justices concluded that "[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." (*Id.* at p. 1001 [115 L.Ed.2d at p. 869].)

Applying the four principles to Harmelin's case, the justices noted that his life sentence without parole was the second most severe penalty permitted by law. However, under the first *Solem* factor, the gravity of the offense—possession of over a pound and a half of cocaine—was sufficient to uphold the constitutionality of the sentence. (*Harmelin* v. *Michigan, supra*, 501 U.S. at p. 1004 [115 L.Ed.2d at p. 871]; accord, *Hutto* v. *Davis* (1982) 454 U.S. 370 [70 L.Ed.2d 556, 102 S.Ct. 703] [upholding a sentence of 40 years for possession with intent to distribute 9 ounces of marijuana].) Moreover, given the serious nature of the crime, no intra- and inter-jurisdictional comparison was necessary. Such analyses were appropriate only in the "rare case" in which the threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality. (*Harmelin* v. *Michigan, supra*, at pp. 1004-1005 [115 L.Ed.2d at p. 871].)

A majority of five justices joined in the plurality opinion's resolution of the second issue in the case: The Eighth Amendment is not violated by a statute that imposes a mandatory term without consideration of mitigating factors and no possibility of reduction. The opinion concludes: "There can be no serious contention, then, that a sentence which is not otherwise cruel and unusual becomes so simply because it is 'mandatory.'" (*Harmelin* v. *Michigan, supra*, 501 U.S. at p. 995 [115 L.Ed.2d at p. 865].)

Comparing *Harmelin* to a "third striker" like appellant leads to the conclusion that the third striker's 25-year-to-life term is not cruel and unusual under the Eighth Amendment. Harmelin received a mandatory life without parole sentence for simply possessing a substantial amount of drugs. In comparison, the third striker like appellant is sentenced to a term of 25 years to life, with the possibility of parole, for committing a felony offense after being convicted of at least 2 prior "serious" or "violent" felonies.

Under the three strikes law, defendants are punished not just for their current offense but for their recidivism. ■ Recidivism in the commission of multiple felonies poses a danger to society justifying the imposition

of longer sentences for subsequent offenses. (*Rummel* v. *Estelle* (1980) 445 U.S. 263, 284 [63 L.Ed.2d 382, 397, 100 S.Ct. 1133].) The primary goals of recidivist statutes are: ". ∴ . to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes. Like the line dividing felony theft from petty larceny, the point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction." (*Id.* at pp. 284-285 [63 L.Ed.2d at p. 397].)

By enacting the three strikes law, the Legislature acknowledged the will of Californians that the goals of retribution, deterrence, and incapacitation be given precedence in determining the appropriate punishment for crimes. Further, those goals were best achieved by ensuring "longer prison sentences and greater punishment" for second and third "strikers." Such determinations are questions of legislative policy. Therefore, even if under the three strikes law California's recidivists are punished more severely than other recidivists, such severity does not render the punishment grossly disproportionate to the crime. (*Harmelin* v. *Michigan, supra,* 501 U.S. at p. 1005 [115 L.Ed.2d at pp. 871-872].) For all the reasons set forth in *Harmelin,* application of the three strikes sentencing scheme to third strikers like appellant does not constitute cruel and unusual punishment under the Eighth Amendment.

Nor is the law cruel and unusual under the Eighth Amendment as applied specifically to appellant. Appellant characterizes his current crime as "mere possession of a firearm," and argues that his sentence under section 667, subdivisions (b)-(i) is the most stringent found in the 50 states. However, the California Legislature views the possession of a handgun by an ex-felon to be a serious offense. The intent underlying section 12021, subdivision (a) was to limit the use of instruments commonly associated with criminal activity and to minimize the danger to public safety arising from the free access to firearms that can be used for crimes of violence. (*People* v. *Bell* (1989) 49 Cal.3d 502, 544 [262 Cal.Rptr. 1, 778 P.2d 129].) The law properly presumes the danger is greater when the person possessing the firearm has previously been convicted of felony. (*Ibid.*) Thus, the Legislature could with good reason conclude that appellant's crime was felonious and deserving of a substantial punishment.

Further, appellant was punished not just for his current offense but for his recidivism. Recidivism justifies the imposition of longer sentences for subsequent offenses. (*Rummel* v. *Estelle, supra,* 445 U.S. at p. 284 [63 L.Ed.2d at p. 397].) The imposition of a 25-year-to-life term for a recidivist offender, like appellant, convicted of a nonviolent, nonserious felony but with at least 2 prior convictions for violent or serious felonies is not grossly disproportionate to the crime. Appellant's sentence under the three strikes law does not constitute cruel and unusual punishment under the Eighth Amendment.

*California Standard*

■ The California Constitution, article I, section 17 provides "Cruel or unusual punishments may not be inflicted or excessive fines imposed." A punishment may violate the California Constitution although not "cruel or unusual" in its method, if "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921], fn. omitted.) The *Lynch* court identified three techniques which courts use to administer this rule. First, it examined the nature of the offense and the offender. (*Id.* at p. 425.) Second, it compared the punishment with the penalty for more serious crimes in the same jurisdiction. (*Id.* at p. 426.) Third, it compared the punishment to the penalty for the same offense in different jurisdictions. (*Id.* at p. 427.)

(a) *Offense and Offender*

■ For the same reasons set forth above under the federal standard discussion, the nature of the offense and the offender supports imposition of the lengthy term. Appellant's situation is comparable to that of the defendant in *People* v. *Ingram* (1995) 40 Cal.App.4th 1397 [48 Cal.Rptr.2d 256]. In *Ingram,* we held that imposition of a 61-year-to-life term under the three strikes sentencing scheme for a 30-year-old offender convicted of 2 counts of residential burglary with 2 prior convictions of residential burglary was not disproportionate, cruel or unusual under the California Constitution and applicable case law.

In this case, the report of the probation officer indicates that appellant has a lengthy record extending from 1972 to the present. In addition to his "strike" robbery convictions in 1977 and 1982, appellant was incarcerated for grand theft in 1980, petty theft with a prior in 1981, grand theft from a person in 1982 and transporting narcotics for sale in 1988. Further, he was returned to custody for violations of parole in 1988 and 1991 and was on parole when he committed the current offense. The *Ingram* court's conclusion is equally applicable to appellant: "Defendant is precisely the type of

offender from whom society seeks protection by use of recidivist statutes. There is no indication defendant desires to reform or to change his criminal behavior. The record reflects an individual who preys on innocent people . . . . [¶] . . . [¶] Fundamental notions of human dignity are not offended by the prospect of exiling from society those individuals who have proved themselves to be threats to the public safety and security. Defendant's sentence is not shocking or inhumane in light of the nature of the offense and the offender." (*People* v. *Ingram, supra,* 40 Cal.App.4th at pp. 1415-1416, fn. omitted.)

Appellant also submits he "has never committed a violent offense in his entire life." His robbery victims would probably disagree. In any event, society's interest in deterring criminal conduct or punishing criminals is not always determined by the presence or absence of violence. (*Rummel* v. *Estelle, supra,* 445 U.S. at p. 275 [63 L.Ed.2d at pp. 391-392]; *People* v. *Ingram, supra,* 40 Cal.App.4th at p. 1416.) Appellant's intractable recidivism, coupled with his current offense, justify the term imposed.

*(b) Punishment for More Serious Crimes in California*

Appellant submits his sentence of 25 years to life is comparable to that imposed for first degree murder. First, a person convicted of first degree murder is subject to the death penalty, life in prison without the possibility of parole, or a term of 25 years to life depending on the circumstances of the offense and the offender. (§ 190, subd. (a).) The maximum punishment is much greater than appellant's maximum punishment under section 667. (*People* v. *Ingram, supra,* 40 Cal.App.4th at p. 1416.) Second, proportionality assumes a basis for comparison. When the fundamental nature of the offense and the offender differ, comparison for proportionality is not possible. The seriousness of the threat a particular offense poses to society is not solely dependent on whether it involves physical injury. Consequently, the commission of a single act of murder, while heinous and severely punished, cannot be compared with the commission of multiple felonies. (*Ibid.*)

*(c) Punishment for Similar Offenses in Other Jurisdictions*

In his reply brief, appellant catalogues the punishment he would receive for his current offense coupled with his prior convictions in other states. The terms run from less than a year to up to 20 or 30 years, with the majority of jurisdictions imposing terms of 5 years or less. From the comparison, he concludes his sentence is " 'so disproportionate . . . that it shocks the conscience and offends fundamental notions of human dignity.' "

We disagree with appellant. That other jurisdictions impose shorter terms when recidivist ex-felons possess weapons in violation of the law does not compel the conclusion that appellant's sentence is disproportionate to his criminal status. The assumption underlying the other-jurisdiction comparison is that the majority of those jurisdictions will have prescribed punishments for this offense that are within the constitutional limit of severity; and if the challenged penalty is found to exceed the punishments decreed for the offense in a significant number of those jurisdictions, the disparity is a further measure of its excessiveness. (*In re Lynch, supra,* 8 Cal.3d at p. 427.) However, as the *Harmelin* court noted, the needs and concerns of a particular state may induce it to treat certain crimes or particular repeat offenders more severely than any other state. Nothing in the prohibition against cruel or unusual punishment per se disables a state from responding to changed social conditions and increasing the severity with which it treats its recidivist felons.

Whether a particular punishment is disproportionate to the offense is a question of degree. The choice of fitting and proper penalty is not an exact science but a legislative skill involving an appraisal of the evils to be corrected, the weighing of practical alternatives, consideration of relevant policy factors, and responsiveness to the public will. In some cases, leeway for experimentation may be permissible. Thus, the judiciary should not interfere in the process unless a statute prescribes a penalty " 'out of all proportion to the offense.' " (*In re Lynch, supra,* 8 Cal.3d at pp. 423-424.)

California's recidivist statutes, of which section 667, subdivisions (b)-(i) is simply its most recent, have withstood constitutional attack for over half a century. In *In re Rosencrantz* (1928) 205 Cal. 534 [271 P. 902], the Supreme Court addressed the validity of a former statute which provided for life imprisonment without parole for persons convicted of a fourth felony. (*Id.* at p. 536.) The court made certain observations which, in light of the enactment of the three strikes law and the passage of Proposition 184, the three strikes initiative, are equally applicable today: "Can it be said that a statute . . . prescribing a punishment of life imprisonment, without the right of parole, for those found guilty of the commission of a felony, after they have been three times previously convicted of a felony, is so disproportionate to the offense for which it is inflicted that it shocks the moral sense of the people? We think not. Society is not only entitled to be protected from the depravity of those criminally inclined, but it is the first and highest duty of government to secure to its citizens the enjoyment of their lives and property against the unlawful aggression of the criminal class, who, if unrestrained, would despoil the law abiding both of life and property. When a person has

proven himself immune to the ordinary modes of punishment, then it becomes the duty of government to seek some other method to curb his criminal propensities that he might not continue to further inflict himself upon law-abiding members of society. This, we think, may be done even to the extent of depriving him permanently of his liberty. . . ." (205 Cal. at p. 539.)

When it enacted section 667, subdivisions (b)-(i), the Legislature, in response to the public will, chose to treat recidivists with prior serious or violent felony convictions differently than other types of offenders. In view of the danger to the safety and peaceful enjoyment of life and property that such offenders pose to society, the imposition of a 25-year-to-life sentence for third strikers, like appellant, does not shock the conscience or offend fundamental notions of human dignity. Accordingly, appellant's sentence is not disproportionate and does not constitute cruel or unusual punishment under the California Constitution.

6. *The three strikes law does not violate equal protection or due process guarantees because it punishes recidivists who commit identical crimes differently based solely on the order in which the offenses were committed.*

■ Appellant contends the three strikes law violates constitutional guarantees of equal protection and substantive due process because it punishes persons who have committed identical crimes differently based solely on the order in which the crimes were committed. He posits that a person convicted of second degree robbery, with prior convictions for robbery and being an ex-felon in possession of a firearm, would be sentenced as a "second striker" to a six-year prison term (twice the middle base term).[2] In contrast, appellant, who committed the same three offenses, but in a different order, received a sentence of 25 years to life.

Appellant has not raised a valid equal protection claim. The threshold prerequisite to an equal protection claim is unequal treatment of persons who are similarly situated (*People* v. *Applin* (1995) 40 Cal.App.4th 404, 410 [46 Cal.Rptr.2d 862]), which is absent here. A recidivist previously convicted of a serious or violent felony is dissimilar from a recidivist previously convicted of a nonserious felony in that the former has previously demonstrated a much greater danger to society than the latter.

A defendant who has been convicted of one crime is not in the same position as a defendant who has been convicted of a different crime. (*People*

---

[2]Appellant ignores the applicable enhancements (§ 667, subd. (a) and § 667.5, subd. (b)) which would add an additional six years to the sentence.

v. *Applin, supra,* 40 Cal.App.4th at p. 410.) Likewise, a recidivist with two prior serious felony convictions is not comparable to a recidivist with prior nonserious felony convictions or a recidivist with one offense of each type, as in the example appellant poses. Violent and serious felony offenses differ from other offenses in many ways, including the reasons and motives of the criminal, the outrage and harm to the victim, and the potential for danger to the victim and society in general. Such differences warrant different treatment. (*People* v. *Jacobs* (1984) 157 Cal.App.3d 797, 804 [204 Cal.Rptr. 234].)

A person who has committed and been convicted of two serious or violent felonies before the instant offense is a recidivist who has engaged in significant antisocial behavior and who has not benefited from the intervention of the criminal justice system. He is the prototype of the repeat offender for whom the three strikes legislation was drafted. It is reasonable for the Legislature to distinguish between those felons, like appellant, who come to court with a history of serious or violent felony convictions and those who do not. Such exercise of legislative discretion cannot be defeated simply by the argument that at the end of a mathematical process the offenders have committed an equal number of serious and nonserious felonies. The Legislature is entitled to treat recidivist felons of the type described in the three strikes law more harshly than those recidivists who have not yet qualified.

In the exercise of its police power, the Legislature does not violate due process so long as an enactment is procedurally fair and reasonably related to a proper legislative goal. The wisdom of the legislation is not at issue in analyzing its constitutionality, and neither the availability of less drastic remedial alternatives nor the legislative failure to solve all related ills at once will invalidate a statute. (*Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70, 78 [177 Cal.Rptr. 566, 634 P.2d 917]; *People* v. *Katrinak* (1982) 136 Cal.App.3d 145, 150 [185 Cal.Rptr. 869].) Moreover, there is no requirement that the Legislature penalize all culpable conduct or precisely structure penal sanctions so that all degrees of culpability are placed in their proper place in some continuum of penalties. (*People* v. *Jacobs, supra,* 157 Cal.App.3d at p. 804.) The three strikes law is the Legislature's attempt to address the threat to society posed by the class of persons previously convicted of serious or violent felonies. There is no invidious classification or equal protection violation involved in that lawmaking.

*People* v. *Olivas* (1976) 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375], which appellant claims is analogous to his situation and compels reversal, actually supports the People's position when read in context. *Olivas* held that

section 1770 of the Welfare and Institutions Code violated the equal protection clauses of the California and United States Constitutions insofar as it permitted misdemeanants between the ages of 16 and 21 to be committed to the Youth Authority (Welf. & Inst. Code, § 1731.5) for a term potentially longer than the maximum jail term which might have been imposed for the same offense if committed by a person over the age of 21 years. In finding a denial of equal protection, the court emphasized that youthful misdemeanants committed pursuant to Welfare and Institutions Code section 1731.5 "have been prosecuted *as adults,* adjudged by the same standards which apply to *any competent adult,* and convicted *as adults in adult courts.*" (17 Cal.3d at pp. 242-243, italics in original.) In other words, the misdemeanants committed to the Youth Authority were similarly situated as far as the criminal justice system was concerned with adult misdemeanants sentenced to jail. The court noted it was not addressing the situation in which a juvenile adjudged under the juvenile court law as a juvenile contends that his term of confinement exceeds that which might have been imposed on an adult or juvenile who committed the identical unlawful act and was convicted in the criminal courts. (*Id.* at p. 243, fn. 11.)

That situation presented itself in *In re Eric J.* (1979) 25 Cal.3d 522 [159 Cal.Rptr. 317, 601 P.2d 549]. Eric J. was adjudged under juvenile court law as a juvenile. Pursuant to Welfare and Institutions Code section 726, subdivision (c), the maximum term for which he might be confined for the burglary was automatically set at three years. An adult or juvenile convicted in the criminal courts of committing the identical unlawful act could not, without a finding of aggravating circumstances, be imprisoned more than two years. Despite this disparity, the court held Eric had not been denied equal protection of the laws. "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." (25 Cal.3d at p. 530.) Adults convicted in the criminal courts and sentenced to prison and youths adjudged wards of the juvenile courts and committed to the Youth Authority are not "similarly situated." (*Ibid.*)

Read together, *People* v. *Olivas* and *In re Eric J.* support the conclusion that an equal protection analysis requires the classes being compared to be truly similarly situated. Persons with two prior "strike" felony convictions are not similarly situated with persons with fewer or no prior "strike" convictions, regardless of the character of their present offense. Accordingly, appellant cannot show an equal protection violation.

## DISPOSITION

Affirmed.

Martin, Acting P. J., and Wiseman, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 12, 1996. Mosk, J., was of the opinion that the petition should be granted.