[No. G026878. Fourth Dist., Div. Three. Mar. 27, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS ELLIS EDWARDS, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I through V.

COUNSEL

Sharon M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Meagan J. Beale and Kristine A. Gutierrez, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BEDSWORTH, J.**—A jury convicted Thomas Ellis Edwards of petty theft with a prior and possessing a controlled substance.[1] It also found he had suffered two prior strike convictions and served three prior prison terms. On appeal, he contends the court erred by: (1) denying him the opportunity to challenge the admissibility of his confession outside the presence of the jury;

---

[1] The jury acquitted Edwards of receiving stolen property, which was charged as an alternative count to the theft offense.

(2) refusing to sever the charges; (3) instructing with CALJIC No. 2.15; and (4) sentencing him to 25 years to life in prison. He also contends the prosecutor committed misconduct in closing argument, and the "Three Strikes" law is unconstitutional. Finding no merit to these contentions, we affirm the judgment.

Late one evening, Fullerton Patrol Officer William Kendrick, Jr., saw Edwards driving in a strip mall with his lights off. Because all of the stores in the mall were closed, Kendrick contacted him to see what he was up to. While they were talking, Edwards consented to a search of his vehicle. In it, Kendrick found two knives, an axe, a flashlight, a cutting torch, and an Uzi-style toy gun. He also found a variety of tools, including a sledgehammer, a prying device, and two pairs of bolt cutters.

Further investigation by Kendrick uncovered the fact that the vehicle identification number on Edwards's vehicle did not correspond to the license plate number. When Kendrick examined the license plate, he noticed another one underneath it covered with tape. The taped plate was the original and the other one was stolen. Following this discovery, Kendrick arrested Edwards on suspicion of burglary and took him into custody.

At the stationhouse, Police Officer Brian Cox questioned Edwards after reading him his *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436). Edwards admitted he was on the prowl to commit a burglary when Kendrick stopped him. He explained the tools in his vehicle were for breaking into things, and the weapons were for protection. Edwards also admitted he had pilfered the stolen license plate that was found on his vehicle. He said the stolen plate would help him avoid apprehension during a burglary because if someone reported the plate's number to the police it would "not come back to him." When Cox asked Edwards about drugs, he said he had used methamphetamine two days earlier.

Armed with this information, Police Officer Michael Montgomery and Parole Officer David Lopez searched Edwards's apartment the following day. In the bedroom, Montgomery found a baggie containing methamphetamine and Lopez found some used syringes. They also found a large pair of bolt cutters in the room.

Montgomery and Lopez then paid Edwards a visit in jail. After reminding him his *Miranda* rights were still in effect, they questioned him about the items found in his house. According to Montgomery, Edwards admitted they were his. He also said he had lied to Cox about stealing the license plate. However, later in the interview he flip-flopped again and told Montgomery he did in fact steal the plate.

At trial, Edwards testified he was being pursued by gang members shortly before Kendrick stopped him. He said that during the chase he suddenly remembered he had an extra license plate in his vehicle that he had found. Fearing his pursuers would use his license plate number to obtain his address, he pulled over and affixed the extra plate to his bumper. He explained this to Kendrick, but the officer did not seem interested. Later, at the police station, Cox told him he would keep him there all night until he confessed to burglary. Eventually, he admitted the tools found in his vehicle could be used to commit burglary. As for the contraband found in his house, he admitted the syringes were his. However, he insisted there were no drugs in his house at the time of the search. He also said that he told this to Lopez and Montgomery when they interviewed him in jail.

Lopez testified that he and Montgomery searched different parts of Edwards's bedroom. He discovered the syringes, and Montgomery found something else, but he did not remember what it was. Regarding the jail interview, Lopez testified he did not hear Edwards confess to stealing the license plate or possessing methamphetamine. But then again, he was not present during the entire interview.

I-V*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## VI

■    Edwards contends the Three Strikes law violates due process and equal protection because it takes into consideration the order in which a defendant's crimes were committed. To wit, the law imposes greater punishment on someone like Edwards, who commits a nonstrike offense after two or more strike offenses, than it does on a defendant who commits such offenses in reverse order, i.e., a defendant whose crimes are of increasing seriousness. According to Edwards, "There is no way to justify such a statutory scheme." Actually, there is.

This same argument was proffered and rejected in *People v. Cooper* (1996) 43 Cal.App.4th 815 [51 Cal.Rptr.2d 106]. There, the court explained, "Appellant has not raised a valid equal protection claim. The threshold prerequisite to an equal protection claim is unequal treatment of persons who are similarly situated [citation], which is absent here. A recidivist previously convicted of a serious or violent felony is dissimilar from a recidivist previously convicted of a nonserious felony in that the former has previously

*See footnote, *ante*, page 161.

demonstrated a much greater danger to society than the latter. [¶] A defendant who has been convicted of one crime is not in the same position as a defendant who has been convicted of a different crime. [Citation.] Likewise, a recidivist with two prior serious felony convictions is not comparable to a recidivist with prior nonserious felony convictions or a recidivist with one offense of each type, as in the example appellant poses. Violent and serious felony offenses differ from other offenses in many ways, including the reasons and motives of the criminal, the outrage and harm to the victim, and the potential for danger to the victim and society in general. Such differences warrant different treatment. [Citation.] [¶] A person who has committed and been convicted of two serious or violent felonies before the instant offense is a recidivist who has engaged in significant antisocial behavior and who has not benefited from the intervention of the criminal justice system. He is the prototype of the repeat offender for whom the [T]hree [S]trikes legislation was drafted. It is reasonable for the Legislature to distinguish between those felons, like appellant, who come to court with a history of serious or violent felony convictions and those who do not. Such exercise of legislative discretion cannot be defeated simply by the argument that at the end of a mathematical process the offenders have committed an equal number of serious and nonserious felonies. The Legislature is entitled to treat recidivist felons of the type described in the [T]hree [S]trikes law more harshly than those recidivists who have not yet qualified." (*Id.* at pp. 828-829; accord, *People v. Kilborn* (1996) 41 Cal.App.4th 1325, 1328-1332 [49 Cal.Rptr.2d 152].)

We agree with much of *Cooper*'s analysis. But we feel the best response to the argument is that the statutory scheme represents a recognition of the significance of deterrence. An individual with two prior serious or violent felonies—two strikes—who nonetheless commits another felony, has demonstrated an imperviousness to deterrence which it would be folly to ignore. A person whose record includes only one strike conviction has not demonstrated such intransigence. That is a valid legislative consideration.

Edwards—and all those similarly situated—knew that if he committed a new felony he would face life imprisonment. The fact he was willing to engage in felonious conduct despite such horrific consequences identifies him as a more serious threat than the person who had not committed two previous serious or violent felonies, and whose second "strike" felony was therefore not committed in the face of such forceful legislative dissuasion. His third strike consisted not so much in the new crime he committed, but in his rather convincing demonstration that no consequence would deter him

from crime. The Legislature was entitled to conclude that such resistance to deterrence required dire consequences.

The judgment is affirmed.

Sills, P. J., and O'Leary, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 19, 2002. Kennard J., did not participate therein.