Filed 7/15/13  P. v. Miller CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>STEVEN BRUCE MILLER,<br><br>　　　Defendant and Appellant. | B239942<br><br>(Los Angeles County<br>Super. Ct. No. YA081419) |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County, James R. Brandlin, Judge.  Affirmed.

　　　　Rita L. Swenor, under appointment by the Court of Appeal for Defendant and Appellant.

　　　　Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Michael R. Johnsen and Jonathan M. Krauss, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Steven Bruce Miller appeals from the judgment entered following his convictions arising from a bank robbery. He contends his state prison sentence of 160 years to life is unconstitutional. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On the morning of October 29, 2010, Miller rushed into One West Bank in Redondo Beach, wearing a bandana over his face and holding a handgun. After announcing he was committing a robbery, Miller demanded money from four different bank employees at gunpoint, repeatedly yelled profanities and threatened to kill them. The employees surrendered approximately $9,000 in cash, and Miller fled. He was arrested after dropping a pillow case at the scene, which contained his DNA.[1]

Miller was charged by amended information with four counts of second degree robbery, with special allegations he had personally used a firearm to commit the offenses (Pen. Code, §§ 211, 12022.53, subd. (b)). Miller was also alleged to have suffered three prior serious or violent felony convictions within the meaning of Penal Code section 667, subdivision (a)(1) and the "Three Strikes law" (Pen. Code, §§ 667, subds. (b)-(i); 1170.12, subds. (a)-(d)) and to have previously served two separate prison terms for felonies (Pen. Code, § 667.5, subd. (b)).

The jury convicted Miller as charged and found true the firearm-use enhancement allegations. In a bifurcated proceeding, Miller admitted he had previously suffered three prior strike convictions and had served two separate prison terms.

At sentencing, defense counsel argued Miller's history of mental illness, less than average intelligence and prolonged physical abuse as a child were mitigating factors justifying the imposition of concurrent terms.[2] In a sentencing memorandum and before the trial court, the prosecutor argued consecutive terms should be imposed based on

---

[1]     Deoxyribonucleic acid

[2]     Prior to sentencing, the trial court read and considered reports from mental health practitioners attached to defense counsel's sentencing memorandum, which detailed the nature of Miller's mental illness.

various aggravating factors, among them, Miller's extensive criminal record. In 1991, when Miller was 13 years old, he was found to have committed two felonies, taking or driving a vehicle without the owner's consent and receiving stolen property. Delinquency petitions were also sustained against Miller in 1994 for felony drug offenses and unlawful possession of a concealed weapon. As an adult, Miller was convicted in 1996 of two misdemeanor offenses and in 1997 of two counts of robbery, with firearm-use enhancements, and one count each of attempted robbery, evading a police officer and unlawfully driving or taking a vehicle, for which he received an aggregate state prison sentence of 13 years. In 1998, Miller was found guilty of manufacturing a weapon while in custody, for which he was sentenced to an additional two years in state prison. Miller also had multiple probation and parole violations. Miller committed the present offenses in 2010 while on parole.

After hearing argument by counsel, the trial court sentenced Miller as a third strike offender to an aggregate state prison term of 160 years to life, consisting of consecutive terms for each second degree robbery count of 25 years to life, plus 10 years for each firearm-use enhancement, plus 5 years for the prior serious felony enhancement (Pen. Code, § 667, subd.(a)). The court ordered Miller to pay $6,676 in victim restitution to One West Bank and dismissed the Penal Code section 667.5, subdivision (b) enhancements.

## DISCUSSION

Miller, who was 32 years old at the time of the robberies, contends his sentence of 160 years to life in state prison was unconstitutionally excessive in light of his age, mental illness and nonviolent criminal history. Because he failed to raise this issue in the trial court, Miller has forfeited this claim. (See, e.g., *People v. Williams* (1997) 16 Cal.4th 153, 250 [constitutional objections not properly raised are forfeited]; see also *People v. Ross* (1994) 28 Cal.App.4th 1151, 1157, fn. 8 [forfeiture of claim of cruel and unusual punishment].) Nonetheless, we address his contention on the merits because he alternately argues his counsel provided ineffective assistance by failing to object to the sentence on this ground. (See *People v. Norman* (2003) 109 Cal.App.4th 221, 229-230.)

3

Federal courts have consistently rejected claims that life terms imposed on recidivists like Miller violate the ban on cruel and unusual punishment contained in the Eighth Amendment to the United States Constitution. (*Ewing v. California* (2003) 538 U.S. 11, 29 [123 S.Ct. 1179, 155 L.Ed.2d 108] ["In weighing the gravity of [the defendant's] offense, we must place on the scales not only his current felony, but also his long history of felony recidivism. Any other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions"]; *Lockyer v. Andrade* (2003) 538 U.S. 63, 77 [123 S.Ct. 1166, 155 L.Ed.2d 144]; *Harmelin v. Michigan* (1991) 501 U.S. 957, 965 [111 S.Ct. 2680, 115 L.Ed.2d 836]; *Rummel v. Estelle* (1980) 445 U.S. 263, 284 [100 S.Ct. 1133, 63 L.Ed.2d 382].) Neither Miller's criminal record nor the nature of his current offenses warrants a different conclusion in this case.

California appellate courts likewise have consistently rejected claims that sentences imposed under recidivist statutes violate the prohibition against cruel or unusual punishment contained in the California Constitution. (*People v. Cooper* (1996) 43 Cal.App.4th 815, 820, 826-827; *People v. Kinsey* (1995) 40 Cal.App.4th 1621, 1630-1631.) Under state law defendant must overcome a "considerable burden" in challenging his penalty as cruel or unusual (*People v. Wingo* (1975) 14 Cal.3d 169, 174), demonstrating that the punishment is so disproportionate to the crime for which it was imposed it "shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424 (*Lynch*).) In assessing these claims the *Lynch* Court identified three factors for reviewing courts to consider: (1) the nature of the offense and the offender; (2) how the punishment compares with punishments for more serious crimes in the jurisdiction; and (3) how the punishment compares with the punishment for the same offense in other jurisdictions. (*Id.* at pp. 425-427.) Miller maintains that the first and second prongs are dispositive here without having to consider how his sentence compares with those in other jurisdictions for the comparable offenses.

The first prong of *Lynch* does not support a finding of disproportionality. Under the California law of robbery, the Three Strikes law, and the sentence enhancements, the

offenses Miller committed were not simply robberies, but robberies by a recidivist. Miller is a third-strike defendant whose prior convictions include robbery with a firearm-use enhancement, attempted robbery and evading the police, as well as multiple probation and parole violations. Indeed, except for a three-year period, when Miller was a minor, he has reoffended each time after being released from custody; any attempts at rehabilitation have failed. Furthermore, Miller's present offense could have resulted in serious injury or even death for the victims if he had followed through on his threats to kill them. Nor is Miller's mental illness a mitigating factor because there is no evidence of a causal relationship between that condition and the past or current crimes. In short, when the nature of the offense and offender is considered, Miller's sentence is neither shocking nor inhumane. (See, e.g., *People v. Dillon* (1983) 34 Cal.3d 441, 479, 482-488 [determinations whether a punishment is cruel or unusual may be based solely on the nature of the offense and offender]; *People v. Weddle* (1991) 1 Cal.App.4th 1190, 1198-1200.)

As to the second prong of *Lynch*, Miller asserts his sentence of 160 years to life is far greater than imposed in California for two second degree murders. As we have explained, however, Miller is being punished for both his current offenses and his prior criminal behavior under a California statutory scheme that expressly mandates more severe punishment for habitual criminals. Statutory schemes mandating increased punishment for recidivists have long withstood challenges on the ground they constitute cruel or unusual punishment. (See, e.g., *People v. Cooper*, *supra*, 43 Cal.App.4th at pp. 826-827; *People v. Kinsey*, *supra,* 40 Cal.App.4th at pp. 1630-1631; *People v. Cartwright* (1995) 39 Cal.App.4th 1123, 1134-1137.) Furthermore, "California's Three Strikes [sentencing] scheme is consistent with the nationwide pattern of substantially increasing sentences for habitual offenders." (*People v. Ingram* (1995) 40 Cal.App.4th 1397, 1416, disapproved on another ground in *People v. Dotson* (1997) 16 Cal.4th 547, 559-560 & fn. 8.)

5

In sum, Miller has not demonstrated his case is that "exquisite rarity" where the sentence is so harsh as to shock the conscience or offend fundamental notions of human dignity. (See *People v. Kinsey*, *supra*, 40 Cal.App.4th at p. 1631.) Accordingly, there is no basis to find the sentence unconstitutional under either the United States or California Constitutions. (*Lockyer v. Andrade*, *supra*, 538 U.S. at p. 77; *People v. Cooper*, *supra*, 43 Cal.App.4th at pp. 826-827.) Miller's state prison sentence of 160 years to life was properly based on his current crime, his recidivist behavior and his lack of regard for rehabilitation. (See, e.g., *Cooper*, *supra*, at pp. 825-826.)

## DISPOSITION

The judgment is affirmed.


**WOODS, J.**


**We concur:**


**PERLUSS, P. J.**


**ZELON, J.**

6