Filed 11/27/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B289456 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA072690) |
| v. | |
| DAVAREO STEVON ANDERSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kathleen Blanchard, Judge. Affirmed as modified.

Maura F. Thorpe, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General of California, Lance E. Winters, Senior Assistant Attorney General, Noah Hill, Deputy Attorney General, Blythe J. Leszkay, Deputy Attorney General, for Plaintiff and Respondent.

\* \* \* \* \* \* \*

A jury convicted Davareo Anderson of attempted first degree burglary.  On appeal, Anderson argues the trial court erroneously admitted bad character evidence, should have stricken two prior convictions, and gave him the wrong number of presentence custody credits.  In supplemental briefing, Anderson requests we vacate or reverse fines and fees under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).  We modify the trial court's oral pronouncement of judgment to reflect a presentence custody credit of 269 days rather than 156 days.  We otherwise affirm.  Unmodified references are to the Penal Code.

I

Starla Knutson lived next door to Anderson.  Knutson was home alone one evening when she heard the burglar alarm.   She turned the alarm off and heard a noise from a bedroom.  She walked into the bedroom and saw Anderson shaking the window forcefully from outside the house.  Anderson was leaning into the window frame and had a hand on each side.  He wore dark gloves, a gray hoodie, and a backpack.  Knutson feared Anderson was breaking in.  She and Anderson made eye contact.  Anderson ran off and jumped a six-foot fence back into his own yard.

The window was damaged.  There were pry marks and the top and bottom were "punched in."  A piece was missing from the frame.  Deputies found a plastic bag on the ground near the window containing clothes and other items.  Knutson and her husband found a backpack, a jacket, and other items in the yard.

Knutson did not see Anderson after he jumped the fence, but saw a woman standing by the gas meter on the side of the house.  Knutson called the police.  She told the 911 operator the woman standing outside and Anderson were "at the side of the house" and she was "afraid to go out."

Deputies found Anderson and arrested him.

Knutson was scared because Anderson had threatened her, her husband, and her dogs in the past. He had a "violent temper" and had followed the Knutsons and watched their house.

Anderson broke Knutson's glass sliding window about a year earlier. He told Knutson she and her husband "would be harmed" if she told anyone he broke that window. Anderson's mother left Knutson notes that said "keep your mouth shut" and "don't talk about my children."

About six months after the glass sliding window incident, Anderson stole a concrete bunny and a string of solar lights from her yard. Knutson banged on a window from inside the house "to let him know [she had] seen him take those things." Anderson looked at Knutson, took the bunny and the lights, and left. The Knutsons put up a fence and security lights on account of Anderson.

The jury convicted Anderson of attempted first degree burglary. Anderson had three prior strike convictions under the "Three Strikes" law. (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d), 1385, subd. (a).) The trial court thus sentenced him to 25 years to life under the Three Strikes law and 15 years—three consecutive five-year terms—under section 677(a), for a total of 40 years to life.

## II

The trial court properly admitted evidence of Anderson stealing Knutson's lawn ornaments and his threats against Knutson.

We review evidentiary rulings for abuse of discretion. (*People v. Scott* (2011) 52 Cal.4th 452, 491.)

A

We begin with the lawn ornaments.  Evidence of this theft was admissible to show Anderson's intent to steal from Knutson when he attempted to break into her home.

The prosecution had to prove, beyond a reasonable doubt and to the unanimous satisfaction of 12 jurors, that Anderson intended to steal from Knutson when he tried to break into her house.  (§ 459.)  A possible explanation for a neighbor at your window is the benign purpose of being neighborly, of a friendly visit.  Another possible explanation, as Anderson argues, is to harass or scare your neighbor.  If accepted, either would be a winning defense.  Evidence that Anderson took the bunny and lights from Knutson's yard would show Anderson had stolen from Knutson in the past.  This properly could create an inference probative of criminal intent.

The trial court gave the jury a limiting instruction, stating the evidence "may be considered by you only for [the] limited purpose of determining it tends to show the existence of the intent which is a necessary element of the crime charged."

Anderson argues the trial court improperly admitted the lawn ornament theft evidence under Evidence Code section 1101, subdivision (b), because the two incidents—stealing the lawn ornaments from Knutson's yard and attempting to break into Knutson's home — "bore almost no similarity or connection."

This argument fails because the incidents were similar in the relevant way:  the earlier theft tended to support the inference Anderson intended to steal from Knutson both times.  (See *People v. Ewoldt* (1994) 7 Cal.4th 380, 402 (*Ewoldt*).)  A visit seems less neighborly, less benign, when the visit is by the one who has stolen from you just months before.  This is common

4

sense. (Cf. *People v. Carter* (2005) 36 Cal.4th 1114, 1148–1149 [despite differences between the incidents, the trial court properly determined the offenses were sufficiently similar to infer the defendant harbored the same intent to kill and to steal, after considering the shared characteristics].)

Anderson also argues the trial court should have excluded the evidence under Evidence Code section 352. The trial court has broad discretion to assess whether evidence is more prejudicial than probative. We do not disturb the ruling unless the court did something arbitrary, capricious, or patently absurd. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124–1125.) This decision was correct.

B

We turn to Anderson's threats against Knutson. Evidence of these threats was admissible as to Knutson's credibility as a trial witness.

Knutson testified Anderson had threatened her, her husband, and her dogs in the past. She also testified Anderson broke her glass sliding window about a year before the attempted burglary in this case. Anderson told Knutson she and her husband "would be harmed" if she told anyone what he did. Anderson's mother left Knutson notes that said "keep your mouth shut" and "don't talk about my children."

At an Evidence Code section 402 hearing, defense counsel objected to these threats as "random things that I don't believe are relevant or material." The parties also discussed the recording of Knutson's 911 call after Anderson forcefully shook her window. Knutson told the operator Anderson had broken one of her windows before, but "I was afraid to say anything because I'm scared of [Anderson]." The trial court ruled the threats

5

admissible because they were relevant as to Knutson's credibility as a witness. Citing *People v. Burgener* (2003) 29 Cal.4th 833, 869 (*Burgener*) and *People v. Olguin* (1994) 31 Cal.App.4th 1355, 1368–1369 (*Olguin*), the trial court stated it had discretion to admit this evidence to explain Knutson's fear and to show she was testifying despite fear of recrimination.

Evidence of the threats was admissible under *Burgener* and *Olguin*. It was unnecessary to corroborate the threats before admitting evidence of them. And it was not essential the threats emanate directly from Anderson himself. (*Burgener*, *supra*, 29 Cal.4th at p. 869.) The jury was entitled to evaluate Knutson's testimony knowing she testified under these circumstances. (*Olguin*, *supra*, 31 Cal.App.4th at p. 1369.) Admitting the threats was proper under Evidence Code section 352. (*Ibid.*)

The trial court thoughtfully considered the prejudicial nature of the threats and did not want "the People to get into the specifics of all of those prior threats, mostly under 352 in terms of an undue consumption of time, and a confusion of the issue." The court endeavored "to sanitize this for the defense by allowing this general testimony" and limited the prosecution, "in general, to ask her if she is afraid." If Knutson said yes, the prosecution could ask her why and let her "very generally testify about that, without getting into the specifics of, on this day, this happened and on this day, this happened." Then the trial court added, "Unless the defense wants to explore it on cross and opens the door to it."

Defense counsel did decide to open the door. Knutson did not give context to Anderson's threats until defense counsel directly asked, "And over the next year, he made threats to you?" after Knutson testified that Anderson broke her sliding glass

door.  Defense counsel also asked, "His mom also made some threats to you, right?" and asked about the statements Anderson's mother made.  Knutson did not otherwise testify about the specific threats Anderson and his mother made against her.

The trial court properly limited the prosecution's introduction of Anderson's threats into evidence.  Defense counsel decided to ask many specific questions about the threats.  This may well have been a sound tactical decision for many reasons, but Anderson was not improperly prejudiced when his counsel tested the evidence beyond the trial court's parameters.

The trial court correctly admitted evidence of the lawn ornament theft and Anderson's threats.  These holdings obviate the need to discuss alternative arguments.

## III

The trial court did not abuse its discretion by denying Anderson's request to strike two prior convictions under the Three Strikes law.

Anderson argues the trial court should have stricken two of his three prior strikes because (1) his proposed alternate sentence of 19 years was sufficiently harsh, and (2) his conviction for attempted burglary "clearly" fell outside the spirit of the Three Strikes law.

The first argument is irrelevant.  The pertinent question is whether Anderson was outside the spirit of the Three Strikes law and therefore should be treated as though he were not previously convicted of a serious or violent felony.  (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

Anderson's second argument fails because the nature of the attempted burglary and his extensive criminal history place him within the Three Strikes law's spirit.

The trial court properly considered Anderson's current and prior convictions, background, character, and prospects. (*People v. Williams*, *supra*, 17 Cal.4th at p. 161.) After Anderson's first burglary in 2005, he committed misdemeanors in 2006, 2010, and 2011 before his first strike for residential burglary in 2011. Anderson stole items worth about $1,600 from a neighbor's house. His second and third strikes in 2013 and 2014 were for making criminal threats. In 2013, he threatened to burn down a building. In 2014, he threatened to shoot his mother.

The attempted burglary conviction in this case was Anderson's fourth strike. The trial court noted the facts here were "strikingly similar to the facts of the first residential burglary." The court described Anderson as "the poster child for the Three Strikes law in that he has a history of just conviction after conviction of criminality." The purpose of the Three Strikes law is to deter repeat felony offenders and protect society. (See *Ewing v. California* (2003) 538 U.S. 11, 26–27.) Anderson's continuous criminal conduct, which includes threats of violence and burglarizing his neighbors, places him within the law's spirit.

Anderson makes an irrelevant argument. He says we should strike two prior convictions because he did not physically harm anyone. But the Three Strikes law does not require physical injury. (*People v. Cooper* (1996) 43 Cal.App.4th 815, 826.) It is not only physical injury that crime victims fear.

A repeat criminal falls outside the spirit of the Three Strikes law only in extraordinary circumstances. (*People v. Carmony* (2004) 33 Cal.4th 367, 378.) The trial court's decision

8

was not so arbitrary or irrational that no reasonable person could possibly agree. (*Id.* at p. 377.) The court considered the circumstances and reasonably concluded it would not be in the interest of justice to strike Anderson's prior convictions. There was no abuse of discretion.

IV

Anderson is entitled to 269 days of presentence custody credit.

The parties agree the trial court erroneously gave Anderson 156 days of presentence custody credit at sentencing. They also agree the sentencing minute order and abstract of judgment correctly provide Anderson 269 days of presentence custody credit.

We thus modify the trial court's oral pronouncement of judgment to reflect a presentence custody credit of 269 days rather than 156 days.

V

Anderson forfeited his *Dueñas* claims.

He concedes he did not challenge the fines and fees in the trial court. He thereby forfeited these arguments. (*People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153–1155.)

**DISPOSITION**

The oral pronouncement of judgment is modified to reflect a presentence custody credit of 269 days rather than 156 days. The judgment is affirmed in all other respects.

WILEY, J.

I concur:

GRIMES, J.

9

**People v. Anderson**
**B289456**

BIGELOW, P.J., Concurring:

I concur.  I write separately to add that I believe the imposition of the assessments and restitution fine did not violate appellant's Due Process rights, as articulated in *People v. Hicks* (2019) 40 Cal.App.5th 320.


BIGELOW, P. J.

1