[No. E018074. Fourth Dist., Div. Two. Sept. 26, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH PATRICK HENSON, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II.A., B., C., D., F., G., and H.

**COUNSEL**

David K. Rankin, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster and M. Eugenia Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RICHLI, J.**—Defendant was convicted of first degree burglary (Pen. Code, § 459),[1] stalking (§ 646.9, subd. (a)), and peeking while loitering. (§ 647, subds. (h), (i).) Because defendant had prior serious and violent felony convictions, the court sentenced him to a term of 25 years to life for each current offense, pursuant to the three strikes law. (§§ 667, subds. (b)-(i), 1170.12.)

In the published part of this opinion, we conclude the court improperly limited defendant's presentence conduct credits to 15 percent of time served, under section 2933.1. That statute applies only where the *current* conviction is for a "violent felony" as defined in section 667.5, subdivision (c). Although the latter section includes as a violent felony any felony punishable by life in prison, we conclude that provision should be applied only to offenses which themselves carry a life sentence, and not to those which, like the offenses here, carry that sentence only because of the defendant's prior convictions.

In the unpublished part of the opinion, we reject defendant's remaining contentions.

I

### FACTUAL AND PROCEDURAL BACKGROUND

A. *Facts*

Ms. V.N., who was 86 years old at time of trial, lived alone. On three occasions in October and December 1994, she discovered numerous small personal items missing from her home. Each time, the items included panty hose and hand lotion. On the occasion in October, V.N. briefly saw an intruder, who wore a white shirt, in her guest bedroom before she noticed the items missing. On the occasions in December, she noticed her back door had been tampered with.

In May 1995, V.N. began to receive telephone calls from an unknown male. The calls continued into September 1995. The caller said he liked

---

[1]Unspecified statutory references are to the Penal Code.

older women. He also said V.N. had a beautiful body. In one call, the caller said he had taken pictures of V.N. undressed. However, she knew he could not have done so.

As the calls continued, the caller said he wanted to come to V.N.'s house and make love with her. Several times, he said he was coming over. The caller did not use vulgarities, and typically called V.N. by "Miss" and her last name.

In July 1995, V.N. heard a tap on her window and saw a person squatting outside her house. Later, the caller bragged about having been in V.N.'s yard.

On one occasion, V.N. found a pair of panty hose and a bathing suit in her bed. They did not belong to her.

V.N. was unable to identify the person who had come into her house. She also was unable to identify the voice of the caller from a tape recording of defendant's voice.

The prosecution introduced evidence of similar burglaries of, and phone calls to, older women, to which defendant had confessed or otherwise could be connected. The details of this evidence are discussed below in connection with defendant's argument that the evidence was improperly admitted. The prosecution also relied on a "trap" placed on V.N.'s phone around June 1995 by the telephone company, which identified the phone numbers of those who called her. The trap indicated that on June 18, a call had been made from a number listed as belonging to defendant's girlfriend, with whom he lived. V.N. testified that on that day, the caller had telephoned her and said he was coming over to sleep with her.

On another occasion, V.N. received a call from a "boy" she did not know. A woman came on the line and wanted to know if "Kenny" had called V.N. Defendant's girlfriend, Janet H., testified about an occasion on which she overheard defendant talking on the telephone and thought he might be having an affair. She pushed the redial button and a woman answered. She asked the woman whether she knew "Ken." The woman said she did not, and said she had been receiving hang-up calls "and stuff like that."

Janet H. also testified defendant told her he was addicted to making "prank" telephone calls. Additionally, she saw defendant on one occasion with a phone book and a jar of Vaseline, and she told a police officer she thought defendant might have been masturbating while on the phone.

The police interviewed defendant in September 1995. Defendant admitted making between one and five prank phone calls. He said he masturbated during the calls. He said he called numbers he did not know. He denied committing any burglaries.

### B. *Convictions and Sentence*

The jury convicted defendant of three counts of first degree burglary based on the October and December incidents, one count of stalking based on conduct occurring between September 1994 and September 1995, and one count of peeking while loitering based on the July incident in V.N.'s yard. The court found true allegations that defendant had been convicted of first degree burglary in 1984 and 1991, and of assault with intent to commit rape (§ 220) in 1984. Under the three strikes law, it sentenced defendant to 25 years to life in prison for each current felony, for a total of 100 years to life. It imposed six months, concurrent, for the loitering conviction.

## II

### DISCUSSION

Defendant contends (1) the court improperly admitted evidence of uncharged offenses; (2) the prosecutor committed misconduct by eliciting evidence of an uncharged offense the court had excluded; (3) the evidence was insufficient; (4) prejudicial juror misconduct occurred; (5) the court improperly limited his presentence conduct credits; (6) section 654 prohibits punishment of defendant for both the burglaries and the stalking count; (7) the matter should be remanded to permit the court to exercise its discretion whether to strike defendant's prior convictions; and (8) defendant's sentence is cruel and unusual punishment.

### A.-D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

### E. *Presentence Conduct Credits*

 Section 4019 permits a prisoner, "following arrest and prior to the imposition of sentence for a felony conviction," to earn an additional two days' credit for every four days in custody by performing assigned labor and complying with rules and regulations. (*Id.*, subds. (a)(4), (b), (c), (f).) Defendant contends that because he served 156 days before being sentenced,

---

*See footnote, *ante*, page 1380.

he should have received an additional 78 days' credit under section 4019. Instead, the court awarded him 23 days, pursuant to section 2933.1.

Section 2933.1 imposes a 15 percent limit on presentence conduct credits for "any person who is convicted of a felony offense listed in Section 667.5." (§ 2933.1, subds. (a), (c).) The 15 percent limit applies "[n]otwithstanding Section 4019 or any other provision of law." (*Id.*, subd. (c); see also *People* v. *Caceres* (1997) 52 Cal.App.4th 106, 111 [60 Cal.Rptr.2d 415] [section 2933.1 preempts section 4019].)

Subdivision (c) of section 667.5, which contains the list of felonies incorporated by reference into section 2933.1, defines "violent felony" for purposes of imposing enhancements for prior convictions resulting in prison terms. None of defendant's current offenses is among the offenses listed specifically in section 667.5, subdivision (c). However, that provision defines "violent felony" to include not only the listed offenses, but also "[a]ny felony punishable by death or imprisonment in the state prison for life." (*Id.*, subd. (c)(7).)

The Attorney General asserts that, because defendant was subject to a life sentence under the three strikes law, his current offenses were "violent felonies" under section 667.5, subdivision (c)(7) and he was subject to the 15 percent limit imposed by section 2933.1. Defendant counters that his current offenses, considered by themselves without reference to his prior convictions, do not carry a life sentence and therefore are not "violent" felonies under section 667.5, subdivision (c)(7), to which section 2933.1's limit applies.[5]

The controversy requires us to construe the phrase "[a]ny felony punishable by . . . imprisonment in the state prison for life" in section 667.5, subdivision (c)(7). The issue, which appears to be one of first impression, is whether the "felony" referred to must itself carry a life sentence or whether the phrase is intended to cover any felony the commission of which may *result* in a life sentence, even if the sentence is based in part on conduct other than the current felony itself. For the following reasons, we conclude section 667.5, subdivision (c)(7), as incorporated into section 2933.1, should apply only to felonies which by themselves are punishable by life.

First, we note the Legislature in section 667.5, subdivision (c), stated: "The Legislature finds and declares that these specified crimes merit special

---

[5]The three strikes law itself imposes a 20 percent limitation on sentence credits (§§ 667, subd. (c)(5), 1170.12, subd. (a)(5)), but that limitation only applies to postcommitment credits. Therefore, except where section 2933.1 applies, section 4019 remains applicable to precommitment credits even in three strikes cases. (*People* v. *Caceres*, *supra*, 52 Cal.App.4th 106, 110; *People* v. *Hill* (1995) 37 Cal.App.4th 220, 225-227 [44 Cal.Rptr.2d 11].)

consideration when imposing a sentence to display society's condemnation for these *extraordinary crimes of violence against the person.*" (Italics added.) Similarly, in 1980, when it amended other sections of the Penal Code, the Legislature stated: "The legislative intent in enacting subdivision (c) of Section 667.5 of the Penal Code was to identify these *'violent felonies'* and to single them out for special consideration in several aspects of the sentencing process." (Stats. 1980, ch. 132, § 1(b), p. 305, italics added.)

It also appears the Legislature had in mind crimes of violence when it enacted section 2933.1. Although section 2933.1 in referring to section 667.5, subdivision (c), does not use the term "violent felony," the Legislative Counsel's Digest for the bill which enacted section 2933.1 stated: "This bill would provide, among other things, that notwithstanding any other law, any person who is convicted of a *violent felony*, as defined, shall accrue no more than 15% of worktime credit, as defined." (Legis. Counsel's Dig., Assem. Bill No. 2716 (1993-1994 Reg. Sess.), italics added.) Similarly, the digest stated: "This bill also would provide that its provisions shall only apply to *violent felonies* that are committed on or after the date on which its provisions become operative." (*Ibid.*, italics added.)

█ It is reasonable to presume that the Legislature acted "with the intent and meaning expressed in the Legislative Counsel's digest." (*People* v. *Superior Court (Douglass)* (1979) 24 Cal.3d 428, 434 [155 Cal.Rptr. 704, 595 P.2d 139].) █ The references in the digest to "violent felonies" therefore support the conclusion the Legislature contemplated application of section 2933.1 to the kinds of "extraordinary crimes of violence against the person" to which section 667.5, subdivision (c) is directed.

The offenses specifically listed in section 667.5, subdivision (c), and indeed most offenses punishable by life in prison, indisputably fall into the category of "extraordinary crimes of violence against the person."[6] A "third strike," however, may or may not be such an offense; the three strikes law imposes a life sentence on any defendant convicted of "a felony" who has two or more prior convictions for "serious" (§ 1192.7, subd. (c)) or "violent" (§ 667.5, subd. (c)) felonies. (§ 667, subds. (b), (c), (e)(2).)[7] The current felony need be neither "serious" nor "violent" to constitute a third strike. In *People* v. *Dotson* (1997) 16 Cal.4th 547 [66 Cal.Rptr.2d 423, 941 P.2d 56], for example, the Supreme Court observed that ". . . the defendant's current

---

[6]There may be exceptions. For example, perjury is not normally thought of as a crime of personal violence, but when it is committed to procure the execution of an innocent person it is punishable by death or life in prison. (§ 128.)

[7]Defendant was charged under both the legislative (§ 667) and initiative (§ 1170.12) versions of the three strikes law. The provisions relevant here are the same in both versions. For convenience, from this point on we cite only to the legislative version.

felony need not be 'serious' for the three strikes law to apply" and distinguished between "a recidivist who committed a serious third strike felony" and "a recidivist who committed a *non*serious third strike felony." (16 Cal.4th at p. 555.) Similarly, in *People* v. *Cooper* (1996) 43 Cal.App.4th 815 [51 Cal.Rptr.2d 106], the court upheld a life sentence under the three strikes law for a defendant "convicted of a nonviolent, nonserious felony but with at least 2 prior convictions for violent or serious felonies." (*Id.*, at p. 825.)

If a third strike is automatically to be considered a "violent felony" under section 667.5, subdivision (c) by virtue of the life sentence it carries, then it is an oxymoron to speak of a "nonviolent" third strike as the court did in *People* v. *Cooper.* A third strike would, by definition, always be a "violent" felony. Similarly, the Supreme Court's reference in *People* v. *Dotson* to "a recidivist who committed a *non*serious third strike felony" (16 Cal.App.4th at p. 555) would be meaningless, because a third strike would always be a "serious" felony. The three strikes law incorporates the definition of "serious felony" contained in section 1192.7, subdivision (c). (§ 667, subd. (d)(1).) Section 1192.7, subdivision (c), like section 667.5, subdivision (c), applies to "any felony punishable by death or imprisonment in the state prison for life." (§ 1192.7, subd. (c)(7).) If section 667.5, subdivision (c)(7) is to be read to include all third strikes, there is no logical basis for reading the identical language in section 1192.7, subdivision (c)(7) any differently. If that were done, every third strike would automatically be both a "serious" and a "violent" felony.

A number of features of the three strikes law and other laws suggest the Legislature did not intend that result. First, the three strikes law distinguishes between current convictions which are "violent" or "serious" and those which are not. Section 667, subdivision (c)(6) provides: "If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to subdivision (e)." Section 667, subdivision (c)(7), however, provides: "If there is a current conviction for more than one *serious* or *violent* felony as described in paragraph (6), the court shall impose the sentence for each conviction consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law." (Italics added.) If all third strikes were automatically "serious" and "violent" felonies, then the reference to a current conviction for a "serious or violent felony" in section 667, subdivision (c)(7) would be meaningless and subdivision (c)(6) and (c)(7) would be duplicative in a third strike case. In a recent third strike case, however, the Supreme Court stated that "subdivision (c)(6) and (c)(7) are not duplicative," observing that "[s]ubdivision (c)(7) applies

when there is more than one current *serious or violent* felony." (*People* v. *Hendrix* (1997) 16 Cal.4th 508, 513 [66 Cal.Rptr.2d 431, 941 P.2d 64], italics added.)

Moreover, if every third strike were automatically considered a "serious" and "violent" felony, virtually every third striker would receive not only a life sentence but also a five-year enhancement. Section 667, subdivision (a), imposes a five-year enhancement for each current conviction for a "serious" felony if the defendant previously has been convicted of a "serious" felony. If a third strike were automatically considered a "serious" felony by virtue of the fact it carries a life sentence, the five-year enhancement would be imposed in every third strike case involving a prior serious felony conviction regardless of what offense constituted the third strike.[8]

The Supreme Court, however, has not interpreted the three strikes law to require that every third striker receive, in addition to a life sentence, a five-year enhancement. Quite to the contrary, the court in *People* v. *Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628] stated: "The five-year enhancements mandated by section 667, subdivision (a), however, apply only when the defendant's current offense is a 'serious felony' within the meaning of section 1192.7, subdivision (c), while the sentences mandated by the Three Strikes law apply whether or not the current felony is 'serious.' " (*Id.*, at p. 529.) Similarly, in *People* v. *Dotson,* the court observed in a third strike case that "[u]nder section 667(a) . . . the current felony offense must be 'serious' within the meaning of section 1192.7, subdivision (c), for the five-year enhancement to apply." (16 Cal.4th at p. 555.)[9]

The three strikes law thus recognizes "the meaningful distinction between defendants based upon whether they are newly convicted of serious felonies." (*People* v. *Anderson* (1995) 35 Cal.App.4th 587, 599 [41 Cal.Rptr.2d 474].) In view of that distinction, "[i]t is reasonable to conclude that the Legislature intended to treat serious felons differently than those whose felonies were of a less serious nature." (*People* v. *Nelson* (1996) 42 Cal.App.4th 131, 140 [49 Cal.Rptr.2d 361].) Accordingly, notwithstanding the stated intent of the three strikes law "to ensure longer prison sentences and greater punishment" for recidivists (§ 667, subd. (b)), not all recidivists

---

[8]By definition, a "strike" must be either "serious" or "violent." (§ 667, subd. (d)(1).) Almost all "violent" offenses are "serious" as well. (Compare § 1192.7, subd. (c) with § 667.5, subd. (c).) Therefore, the five-year enhancement would apply in virtually every third strike case.

[9]Defendant's current first degree burglary convictions are "serious" felonies. (§ 1192.7, subd. (c)(18).) However, the Attorney General does not argue defendant should have received five-year enhancements under section 667, subdivision (a).

are to be treated the same under that law. In particular, those who commit a current "serious" felony properly are placed in a different category from those who do not, despite the fact all are recidivists. As the Supreme Court said in *People* v. *Dotson*, " 'It is certainly appropriate to punish more harshly those convicted of new serious felonies.' " (16 Cal.4th at p. 555, quoting *People* v. *Ramirez* (1995) 33 Cal.App.4th 559, 571 [39 Cal.Rptr.2d 374].)

If, as these decisions suggest, it is appropriate to limit enhancements under section 667, subdivision (a) to recidivists whose current offenses, in and of themselves, are "serious," it would seem equally appropriate to limit section 2933.1 to defendants whose current offenses, in and of themselves and without reference to the punishment they warrant under the three strikes law, are "violent." Section 2933.1, like section 667, subdivision (a), has a narrower sweep than the three strikes law. As the court said in *People* v. *Caceres, supra*, 52 Cal.App.4th 106: "Both the Three Strikes law and the Three Strikes initiative apply where the defendant's current conviction is a felony, regardless of whether the felony is *serious, nonserious, violent,* or *nonviolent*. (§§ 667, subds. (b), (c), 1170.12, subd. (a).) In contrast, section 2933.1 applies only where the defendant's current conviction is a *violent* felony listed in section 667.5." (52 Cal.App.4th at p. 112, original italics.) Again, it is meaningless in the third strike context to speak of a "nonserious" or "nonviolent" current conviction if all third strikes are automatically "serious" and "violent" by virtue of their life sentences.

We cannot conclude the Legislature intended in enacting section 2933.1 to eliminate any distinction between "violent" and "nonviolent" third strikers. At the very least, an ambiguity exists with respect to whether the reference in section 667.5, subdivision (c)(7) to "[a]ny felony punishable by . . . imprisonment in the state prison for life," as that reference is incorporated into section 2933.1, was intended to apply to a "nonviolent" third striker. ■ "When language which is susceptible of two constructions is used in a penal law, the policy of this state is to construe the statute as favorably to the defendant as its language and the circumstance of its application reasonably permit. The defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of a statute." (*People* v. *Overstreet* (1986) 42 Cal.3d 891, 896 [231 Cal.Rptr. 213, 726 P.2d 1288], accord, *People* v. *Gardeley* (1996) 14 Cal.4th 605, 622 [59 Cal.Rptr.2d 356, 927 P.2d 713].)

■ We therefore conclude the limit on conduct credits in section 2933.1 should apply only where the current conviction, considered without reference to the three strikes law, qualifies as a "violent" felony. Because defendant's current offenses were not, by themselves, "violent" felonies, he

should have received presentence credits under section 4019 rather than section 2933.1.[10]

F.-H.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III

### DISPOSITION

The judgment is affirmed. The matter is remanded for recomputation of defendant's presentence credits in accordance with this opinion.

McKinster, Acting P. J., and Gaut, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 21, 1998. Mosk, J., was of the opinion that the petition should be granted.

---

[10]The Attorney General appears to suggest section 4019 does not grant presentence conduct credits to defendants who receive an indeterminate sentence. He points out that *People* v. *Hill,* *supra,* 37 Cal.App.4th 220, which held section 4019 applies to three strikes cases absent application of section 2933.1, involved a determinate sentence. Nothing in *Hill* or section 4019 itself suggests application of the statute should be so limited. (Cf., e.g., § 2933, subd. (a) [postcommitment work-time credits limited to prisoners sentenced under Determinate Sentencing Law (§ 1170 et seq.)].) In any event, because the Attorney General does not argue defendant is not entitled to *any* presentence conduct credits, but only that his credits are limited to 15 percent under section 2933.1, only the latter issue is before us.

*See footnote, *ante,* page 1380.