Filed 3/24/14  P. v. Hall CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B243504 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA052734) |
| v. | |
| TIMOTHY DANIEL HALL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daviann L. Mitchell, Judge.  Affirmed in part, modified in part, and remanded with directions.

Linn Davis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Stephanie C. Santoro, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant, Timothy Daniel Hall, appeals his conviction for making criminal threats (2 counts), attempting to dissuade a witness, and corporal injury to a spouse, with two prior serious felony conviction findings (Pen. Code, §§ 422, 136.1, subd. (a)(2), 273.5, 667, subds. (a)-(i)).[1] He was sentenced to state prison for a term of 15 years and 8 months.

The judgment is affirmed in part, modified in part, and remanded for further proceedings.

## BACKGROUND

Viewed in accordance with the usual rule of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established the following.

1. *Prosecution evidence.*

In May 2011,[2] Candace S. was married to defendant Hall although they were no longer living together. They had been married for five years, with two young children, and they separated in September 2010 because Hall was abusive. During the months leading up to the current incident they saw each other occasionally. Candace sometimes had warm feelings for Hall and wanted him to be involved in their children's lives.

On May 4, Hall called to say he had checked into a rehab program, had not eaten for days, and needed a place to stay. Candace agreed to let him stay at her house. They got along at first and even had sex, but Candace warned Hall this did not mean they were getting back together. On the evening of May 5, they argued about their relationship. When Candace said she didn't want to get back together, Hall got mad and threatened to kill her. Candace was frightened because of the look in Hall's eyes and his violent history. They eventually went to sleep.

---

[1] All further references are to the Penal Code unless otherwise specified.

[2] All further date references are to the year 2011 unless otherwise specified.

The next morning, Candace made Hall breakfast and they talked about other things. In the afternoon, Hall went to the store. When he returned, about 6:00 p.m., they began arguing again. Hall got angry and said he wanted Candace to break up with the man she had been seeing. After Candace's friend Jewell called, Hall got mad and bit Candace's ear. He started backing her into the bathroom, yelling in rage. Inside the bathroom, he grabbed her by the throat and said, "Bitch, I'm going to fuck you up. Bitch, I'm going to kill you." He squeezed her throat for five to ten seconds and Candace had difficulty breathing. Hall then let go of her neck and said, "I don't give a fuck about going to jail; if I go to jail today, I'm going for a long time." When he asked if she loved her boyfriend, Candace did not answer in the belief Hall would kill her if she revealed her true feelings. He grabbed her throat again and said, "Bitch, I'm going to kill you."

Candace said she would call her boyfriend and break up with him. She went outside and texted Jewell the words "coco butter," a secret code to indicate Candace was in danger and Jewell should call 911. The police arrived and arrested Hall. Candace told them he had strangled her twice. A few days later, during a medical examination, Candace told a nurse she had been strangled twice. The nurse took photographs of Candace's neck, which revealed injuries consistent with having been strangled.

At trial, Candace admitted she had not been entirely truthful either to the responding police officers or when she testified at the preliminary hearing. She initially said Hall had gained entry to her house by threatening to kick down the door, and that they did not have sex. She lied because she had an open case at the Department of Children and Family Services, and Hall was not supposed to have contact with her children; she was afraid the children would be taken away from her if she told the truth.

There was evidence showing prior incidents of domestic abuse. In 2008, when Candace was five months pregnant, Hall manhandled her, squeezed her throat and slapped her. She reported this incident to the authorities, but she later reconciled with Hall and recanted her police statement. In 2009, Candace gave Hall divorce papers,

which led to an argument during which he attacked her and threw one of their children against a wall.

During a phone call made from a county detention facility on May 10, 2011, Hall asked an unidentified woman to talk to Candace and urge her not to press charges against him. Around the time of the preliminary hearing, this woman called Candace and said she had a message from Hall: Candace should not go forward with the case.

2. *Defense evidence.*

Los Angeles County Deputy Sheriff James Dodson had responded to the 2008 domestic violence call. Candace reported having been assaulted by Hall 10 days earlier. Dodson did not notice any injuries on her. Candace said she did not report the incident right away because she was afraid of Hall and worried the incident might affect her eligibility for Section 8 housing.

A week before trial, Candace told Detective Lisa Ashworth she wanted to change portions of her testimony: Hall had not forcibly entered her house, but rather she agreed to let him come over when he called and said he had no food and wanted to see the kids.

## CONTENTIONS

1. The trial court erred by imposing a five-year prior serious felony conviction enhancement on count 4.

2. The sentence on the second criminal threats conviction constituted improper multiple punishment in violation of section 654.

3. The trial court erred by applying the Three Strikes law to counts 3 and 4.

4. Both parties contend certain sentencing errors must be corrected.

## DISCUSSION

1. *Trial court did not err by imposing a prior serious felony conviction enhancement on count 4.*

Hall contends the trial court erred by imposing a five-year, prior serious felony conviction enhancement (§ 667, subd. (a)) on count 4 because the alleged 1995 conviction was actually a juvenile adjudication. This claim is meritless.

4

Hall is right that a juvenile adjudication cannot support imposition of a prior serious felony conviction enhancement under section 667, subdivision (a) (see *People v. West* (1984) 154 Cal.App.3d 100, 106-110), but the record demonstrates his prior adjudication was an adult criminal conviction for carjacking. The crime occurred when Hall was 18 years old and he received a state prison term. The Attorney General asserts "[t]here is nothing in the record to support appellant's statement that his prior carjacking conviction was a juvenile adjudication," a claim Hall does not dispute.

The trial court did not err by imposing the five-year prior serious felony conviction enhancement.

2. *No violation of section 654.*

Hall contends his concurrent sentence on count 2 (criminal threats) should have been stayed under section 654 because it was part of the same transaction that gave rise to his conviction on count 4 (corporal injury to spouse). This claim is meritless.

a. *Legal principles.*

Section 654, the prohibition against multiple punishment, provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." " 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' [Citation.]" (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208.)

"The question whether section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination. Its findings on this question must be upheld on appeal if there is any substantial evidence to support them. [Citations.] 'We must "view the evidence in a light most favorable to the respondent and presume in support of the [sentencing] order

5

the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]" ' " (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312-1313.) This rule applies whether or not the trial court made express factual findings. (See *People v. Osband* (1996) 13 Cal.4th 622, 730 [trial court's implicit determination that defendant had more than one objective was supported by substantial evidence]; *People v. McCoy* (1992) 9 Cal.App.4th 1578, 1585 [trial court's section 654 finding, whether explicit or implicit, may not be reversed if supported by substantial evidence].)

b. *Discussion*.

The trial court imposed sentences on both of the criminal threat convictions: a consecutive term on count 1 and a concurrent term on count 2. The court explained the count 1 sentence on the ground this conviction was "independent of the actual assault itself." The court gave no reason for the count 2 sentence. During closing argument, in discussing Hall's intent, the prosecutor told the jury: "Obviously we can't read his mind. But what you do is you look at the circumstances and they tell you what a person is thinking when they are doing it. So in our case, he's got her by the throat and he's telling her, I'm going to kill you."

Hall argues his count 2 conviction for threatening to kill Candace violated section 654 because that offense occurred simultaneously with his act constituting spousal abuse (count 4): pushing Candace up against a wall in the bathroom and grabbing her throat. "Appellant had a single criminal objective, i.e., to terrorize Candace into giving up her new boyfriend. The night before, he threatened to kill her (Count 1), but they went to sleep. When Candace did not take him seriously, he coupled the threat with action, the application of physical force. It was only when Candace agreed to terminate the new relationship that appellant stopped choking her. [¶] The two offenses were so 'intertwined' as to constitute a continuous course of conduct."

We disagree. Hall is ignoring the evidence showing that on the second day he assaulted Candace and threatened to kill her *twice*. The first event occurred when Hall dragged Candace into the bathroom, grabbed her by the throat and threatened to kill her.

6

The second event occurred after Hall released his hold on Candace's neck, asked her if she loved her boyfriend and then, when she did not answer, again grabbed her by the throat and threatened to kill her.

"[A] course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment." (*People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11; see *People v. Felix* (2001) 92 Cal.App.4th 905, 915 ["multiple crimes are not one transaction where the defendant had a chance to reflect between offenses and each offense created a new risk of harm"].) Thus, in *People v. Trotter* (1992) 7 Cal.App.4th 363, multiple assault sentences were proper where the defendant fired three gunshots in slightly more than a minute at a pursuing police officer during a freeway chase: "[T]his was not a case where only one volitional act gave rise to multiple offenses. Each shot required a separate trigger pull. All three assaults were volitional and calculated, and were separated by periods of time during which reflection was possible," and "[d]efendant's conduct became more egregious with each successive shot." (*Id*. at p. 368.)

Hall's second spousal assault was divisible from the first because they were separated by a time interval during which he had an opportunity to reflect on what he was doing. Hence, there was substantial evidence supporting the imposition of a separate sentence on count 2.

3. *Trial court properly applied prior serious felony conviction enhancements.*

Hall contends that, because the information only alleged a prior serious felony conviction enhancement as to counts 1 and 2, the trial court erred by using the prior conviction finding when sentencing on counts 3 and 4. This claim is meritless.

a. *Background.*

The information charged Hall with four counts, but the prior serious felony convictions were alleged only as to counts 1 and 2.

Hall asked for a jury trial on his priors. The trial court read the prior conviction allegations to the jury, reciting that each prior conviction-related enhancement was being

7

alleged only "as to counts 1 and 2." While reading the jury instructions, the trial court did not mention any specific count. The prosecutor's jury argument did not reference any specific count. While the jury was deliberating, the trial court asked if the parties had reviewed and approved of the verdict forms, and both parties said yes. The jury verdict finding Hall's 1995 carjacking conviction allegation true (for Three Strikes, prior serious felony conviction, and prior prison term purposes) did not reference any specific count of the information.

   b. *Discussion*.

   *People v. Morales* (2003) 106 Cal.App.4th 445, is directly on point. In *Morales*, a prior strike allegation referred to just one of three counts in the information. As a result, the trial court reasoned it could not double the sentences for the unreferenced counts. The Court of Appeal disagreed: "We conclude that once the jury found defendant had previously been convicted of a violent felony, the sentence as to all counts should have been doubled pursuant to sections 667, subdivision (e)(1) and 1170.12, subdivision (c)(1), subject to the trial court's exercise of its section 1385, subdivision (a) power to strike the prior conviction finding." (*Id*. at pp. 447-448.) Here, the Attorney General argues: "[A]s in *Morales*, neither the trial court's reading of the jury instructions on the prior convictions nor the jury's findings that appellant suffered a prior conviction for carjacking were limited to any particular count. The prosecutor's argument similarly did not limit the prior conviction to any particular count. Therefore, this Court should find that *Morales* controls."

   We do and, therefore, we conclude the trial court did not err by using Hall's 1995 carjacking conviction on each count for which he was convicted in the current case.

4. *Sentencing issues.*

The trial court, having found Hall to be in violation of probation on a prior conviction because of his current offenses, imposed a 16-month term to run consecutively to the sentence on count 4. Regarding this term, the trial court announced: the "credits are zero." Hall contends, and the Attorney General properly agrees, this was incorrect because he is entitled presentence custody credit for time served as a condition of probation. "[T]he California Supreme Court has held credit is to be applied for time served on a subordinate term resulting from a probation violation. (*People v. Riolo* (1983) 33 Cal.3d 223, 228-229 . . . .)" (*People v. Cooksey* (2002) 95 Cal.App.4th 1407, 1414.) Therefore, the judgment must be modified to reflect an award of 120 days presentence custody credits for time served as a condition of probation.

The Attorney General contends the presentence custody credits to be awarded Hall with respect to his present offenses are subject to a 20 percent limitation pursuant to section 667, subdivision (c)(5), because he has prior serious felony convictions. This claim is meritless. The 20 percent limitation prescribed by section 667, subdivision (c)(5), applies to post-sentence credit (i.e., credits that can be earned while serving a prison term), not presentence custody credit. (*People v. Buckhalter* (2001) 26 Cal.4th 20, 32; *People v. Henson* (1997) 57 Cal.App.4th 1380, 1385, fn. 5.)

. The Attorney General points out the abstract of judgment does not reflect the trial court's imposition of the consecutive 16-month sentence imposed for Hall's violation of probation. This should be corrected. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [it is proper and important to correct errors and omissions in abstracts of judgment].)

In addition, we note the sentencing on Hall's principal term (count 4) is unclear. Hall and the Attorney General assert the trial court imposed an eight-year term on count 4. According to the reporter's transcript, the trial court announced the count 4 sentence as "a total of nine years in state prison." The abstract of judgment, however, reflects an eight-year term on count 4. In light of this confusion, we will remand to the trial court for clarification of its sentencing scheme.

9

## DISPOSITION

The judgment is affirmed in part, modified in part, and remanded for further proceedings. The convictions are affirmed. The judgment is modified to reflect an award of presentence custody credits related to Hall's sentence for violating probation as discussed herein. The matter is remanded to the trial court for clarification of its sentencing in accordance with this opinion, and the court is directed to prepare and forward to the Department of Corrections and Rehabilitation an amended abstract of judgment.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

CROSKEY, J.

KITCHING, J.

10