Filed 11/15/24  P. v. Rojas CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Colusa)

----

| | |
|---|---|
| THE PEOPLE, | C098543 |
| Plaintiff and Respondent, | (Super. Ct. No. CR64444) |
| v. | |
| NICKOLAS ROBERTO ROJAS, | |
| Defendant and Appellant. | |

A jury convicted defendant Nickolas Roberto Rojas of residential burglary (Pen. Code, § 459)[1] and possession of a firearm by a felon (§ 29800, subd. (a) (1)) and found true that defendant suffered two prior strike convictions.  The trial court then sentenced defendant to 25 years to life under the Three Strikes law.  (§§ 667, subd. (b), 1170.12.)

---

[1]     Undesignated statutory references are to the Penal Code.

1

On appeal, defendant contends: (1) he was denied effective assistance of counsel based upon his trial counsel's cross-examination of the individual who drove defendant to the location of the burglary; (2) the trial court erred by applying a 15 percent limit on conduct credits; and (3) the trial court erred in denying defendant's request to strike one of the prior strikes. We accept the People's concession that the limitation on conduct credits did not apply. We will modify the judgment accordingly and otherwise affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On September 16, 2022, at around 3:00 p.m., G.W.[2] left his home on Colusa Street in Maxwell and locked the doors. That same afternoon Yadira Grajeda drove to a supermarket in Williams with defendant.[3] They then drove around a neighborhood in Maxwell. Defendant directed Grajeda where to go in Maxwell. Afterwards, they drove back to Colusa and Grajeda dropped defendant off. The two exchanged text messages, and that evening, as they had planned, Grajeda picked up defendant and they returned to the same location in Maxwell.

Grajeda parked on the side of a street and stayed in the car. She could see the back side of a house. Defendant got out of the vehicle. Defendant was wearing a hooded sweatshirt and put the hood up when he got out of the car. Grajeda testified that she could not see where defendant went. After about 10 minutes, defendant called Grajeda and said he was coming back to the car. He asked her to open the trunk. When defendant approached the car, he was carrying a large object wrapped in something white. He put it in the trunk. Defendant directed Grajeda to drive to a location in Live Oak where the item was removed from the trunk of her car.

---

[2] To protect his privacy, we refer to the victim by his initials. (Cal. Rules of Court, rule 8.90 (b)(4).)

[3] Grajeda received immunity for her testimony.

G.W. returned home around 11:30 p.m.  The backdoor was wide open and the window in the door was broken.  He noticed the upstairs door was wide open and items had fallen out from upstairs.  Items were scattered about his bedroom.  He noticed that a white laundry basket, jewelry, a jewelry box, a slingshot, and a computer tablet were missing.  G.W.'s accounts were signed into with passwords on the tablet.  A 12-gauge shotgun and inner tubes for an electric tricycle were missing from the front room.  Two more guns, three gun stocks, and sewing machine parts were missing from upstairs.  G.W. took a photograph of a shoe print—much larger than his shoe size—by the back door.

The night G.W.'s home was burglarized, his neighbor saw a car parked in the alley.  The trunk was open, and a tall, thin white male, who covered his face with a hat, was standing by the trunk.  A video surveillance recording from a neighbor's camera across the street showed a purple Kia sedan on the night of the burglary.  On September 21, 2022, police stopped a Kia sedan with the license plate number shown in the video.  Grajeda was the driver.

About a week after the burglary, G.W. received a security alert on his cell phone about a Google account linked between the tablet and his cell phone.  He also received a notification from his eBay account on the tablet that someone was trying to purchase size 12 shoes and a handgun.

On September 23, 2022, police stopped defendant and seized his cell phone.  Photographs taken with defendant's cell phone showed numerous items missing from G.W.'s home.  Other photos on the cell phone showed G.W.'s utility and bank account information.  When stopped, defendant was wearing size 12 shoes whose pattern was consistent with the photograph G.W. took of the shoe print outside his backdoor.

## DISCUSSION

### I

### *Ineffective Assistance of Counsel*

Defendant claims that his trial counsel was prejudicially ineffective when he asked Grajeda on cross-examination how long defendant had been in the house after he got out of her car. He argues that the question of how long defendant had been "in the house" assumed that defendant had entered G.W.'s residence, even though Grajeda had testified on direct examination that she did not see where defendant went after he left the car. We conclude that defense counsel could have had a tactical reason for asking this question; therefore, his performance was not deficient. Regardless, defendant's claim of ineffective assistance fails because defendant cannot show prejudice as a result.

On direct examination, after Grajeda testified that she and defendant drove to Maxwell the second time, and defendant got out of the car while she stayed behind, the prosecutor asked:

"[PROSECUTOR]: And could you see generally where [defendant] went when he exited your car?

"[GRAJEDA]: No."

Grajeda then testified that defendant called her on her cell phone, said he was coming back to the car, and requested that she open the trunk, which she did. The prosecutor then asked:

"[PROSECUTOR]: All right. And about how long was [defendant] out of your car before he asked you to open your car [trunk]?

"[GRAJEDA]: Um–um, I don't know. Maybe–ten minutes, maybe."

On cross-examination, defense counsel established that, on the first trip to Maxwell, there had been a third person in the car, Sheila Prasad. Defense counsel asked Grajeda a series of questions as to why the three of them had gone on the first drive to

4

Maxwell, and Grajeda provided vague, evasive answers, including the following exchange:

"[DEFENSE COUNSEL]: Are you telling me you drove there just to take a ride?

"[GRAJEDA]: Yes, we drove out of Williams–we drove out to Roy's Market, and then I took that road down there. Down 99."

On re-direct, the prosecutor elicited testimony from Grajeda that Prasad was not with Grajeda and defendant on the second trip to Maxwell that night. On re-cross, defense counsel again sought testimony regarding Prasad's reason for going along on the first trip to Maxwell, and received from Grajeda the answer that there was no reason, "Other than she was in my vehicle, no." At this point, defense counsel—after confirming that Grajeda was receiving immunity for her testimony—shifted to questions about defendant's conduct on the second trip, resulting in the colloquy at issue here:

"[DEFENSE COUNSEL]: Okay. And he was in the house for exactly how long? [¶] Not exactly. But approximately how long was he in the house?

"[GRAJEDA]: About ten minutes, maybe.

"[DEFENSE COUNSEL]: Did you time it on the clock of the car or any other way?

"[GRAJEDA]: No.

"[DEFENSE COUNSEL]: How many trips did he make from the house to the car?

"[GRAJEDA]: Just once.

"[DEFENSE COUNSEL]: Just one?"

" 'In assessing claims of ineffective assistance of trial counsel, we consider whether counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and whether the defendant suffered prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome. [Citations.] A reviewing court will indulge in a presumption that counsel's

5

performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy. Defendant thus bears the burden of establishing constitutionally inadequate assistance of counsel. [Citations.] If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation.' " (*People v. Carter* (2005) 36 Cal.4th 1114, 1189.)

"Although in extreme circumstances cross-examination may be deemed incompetent [citation], normally the decision to what extent and how to cross-examine witnesses comes within the wide range of tactical decisions competent counsel must make. [Citation.] 'Even where defense counsel may have " 'elicit[ed] evidence more damaging to [the defendant] than the prosecutor was able to accomplish on direct' " [citation], we have been "reluctant to second-guess counsel" [citation] where a tactical choice of questions led to the damaging testimony.' " (*People v. Cleveland* (2004) 32 Cal.4th 704, 746; see also *People v. Weaver* (2001) 26 Cal.4th 876, 928 [" 'even "debatable trial tactics" do not "constitute a deprivation of the effective assistance of counsel" ' "].)

Here, we can conceive of a tactical reason for defense counsel to ask Grajeda how long defendant was "in the house." Defense counsel's line of questioning was meant to suggest that it was improbable that defendant acted alone, and that Grajeda's testimony that a third person was not with them on the second trip to Maxwell was not credible. The prosecution presented evidence that multiple rooms in G.W.'s house had been ransacked and many items stolen and wrapped up in a laundry basket. Yet, prompted by defense counsel's question, Grajeda testified that only defendant went into the house, was gone for only ten minutes, and that he made only one trip to the car.

6

Based on the jury instructions, defendant could not be convicted of burglary based solely on possession of property he knew to be stolen. (CALCRIM No. 376.) Instead, the prosecution had to prove that defendant entered the building with the intent to commit a theft. (CALCRIM No. 1700.) Defense counsel's questions highlighted the implausibility of Grajeda's testimony, which coupled with her evasive answers about Prasad's reasons for accompanying them on the first trip to Maxwell, were meant to convey to the jury that a third person (i.e., Prasad) could have entered the house at some point, found the items, and staged them for defendant to retrieve.

In closing, defense counsel argued that Grajeda's testimony, in which she was reluctant to identify Prasad, indicated that "she's still concealing stuff about who's involved and to what extent. Oh, this third person didn't do anything. This third person was just there." He continued that most people would have a reason for going to Maxwell. In this case, according to Grajeda, "No, she is just going to go to Maxwell, this third person. What's that about?" Thus, defense counsel made a reasonable tactical decision to try to undermine the prosecution's theory, based on Grajeda's immunized testimony, that defendant acted alone in entering G.W.'s house and stealing his property, and to suggest that Grajeda's testimony was not credible, and that she was concealing the involvement of a third party.

In any event, even if we were to accept that defense counsel's performance was constitutionally deficient, defendant's claim nonetheless fails because he cannot establish that counsel's challenged conduct was prejudicial. "Prejudice is shown when there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (*People v. Lucas* (1995) 12 Cal.4th 415, 436.) "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' " (*Harrington v. Richter* (2011) 562 U.S. 86, 104.) "The likelihood of a different result must be substantial . . . ." (*Id.* at p. 112)

7

In this instance, there was more than enough evidence for the jury to find defendant guilty of burglary without defense counsel's brief reference to defendant being "in the house." Indeed, the evidence was overwhelming. Defendant directed Grajeda where to go in Maxwell on their first trip. On the second trip to the same place in Maxwell, defendant was wearing a hooded sweatshirt with the hood up when he left Grajeda's car, thereby attempting to conceal his face. G.W. took a photograph of a size 12 shoe print by his back door with a pattern similar to the size 12 shoes on defendant's feet when he was stopped by police. Finally, defendant's cell phone contained photographs of most of the stolen items. Presented with this evidence, the jury found defendant guilty without any need to consider defense counsel's question to Grajeda.

Moreover, it is significant that defendant pins his claim of ineffective assistance on a single question posed by defense counsel. "[W]hile in some instances 'even an isolated error' can support an ineffective-assistance claim if it is 'sufficiently egregious and prejudicial,' [citation], it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." (See *Harrington v. Richter, supra,* 562 U.S. at p. 111.) We have reviewed the record and find defense counsel's overall performance to be engaged and competent, in addition to concluding that defendant was not prejudiced by this counsel's performance. Accordingly, we conclude defendant has not established a claim of ineffective assistance of counsel.

II

*Limit on Conduct Credits*

Defendant argues the trial court erroneously imposed a 15 percent limit on his presentence conduct credits under section 2933.1. At sentencing, the trial court credited defendant with 221 days of actual custody. Applying sections 4019 and 2933.1, the court awarded defendant 33 days of presentence conduct credit. The People agree that section 2933.1 is inapplicable and thus concede the trial court erred in awarding defendant only

33 days of conduct credit. Having reviewed the law and the record, we accept the People's concession.

"Section 4019 permits a prisoner, 'following arrest and prior to the imposition of sentence for a felony conviction,' to earn an additional two days' credit for every four days in custody by performing assigned labor and complying with rules and regulations. (*Id.*, subds. (a)(4), (b), (c), (f).)" (*People v Henson* (1997) 57 Cal.App.4th 1380, 1384 (*Henson*).) "Section 2933.1 imposes a 15 percent limit on presentence conduct credits for 'any person who is convicted of a felony offense listed in Section 667.5.' (§ 2933.1, subds. (a), (c).)" (*Id.*, at p. 1385.) Fifteen percent of 221 days is 33 days, indicating the trial court applied that limit. However, neither burglary nor possession of a firearm are listed in section 667.5, subdivision (c). The only burglary-related offense subject to the 15 percent limit is burglary where a person other than an accomplice is present in the residence during the burglary (*id.*, subd. (c)(21)). Although section 667.5, subdivision (c)(7) includes any felony "punishable by death or imprisonment in the state prison for life," this subdivision does not apply where, as here, a life sentence is imposed only as a result of the Three Strikes law. (*Henson, supra,* at pp. 1389.) In sum, "the limit on conduct credits in section 2933.1 . . . appl[ies] only where the current conviction, considered without reference to the three strikes law, qualifies as a 'violent' felony." (*Id.* at pp. 1389-1390.)

Therefore, defendant should have received presentence credits under section 4019 without regard to section 2933.1. (*Henson, supra*, 57 Cal.App.4th at pp. 1389-1390.) Under section 4019, defendant is entitled to 220 days of conduct credit. (§ 4019, subds. (b), (c), (f); *People v. Whitaker* (2015) 238 Cal.App.4th 1354, 1358 [defendant is entitled to two days of presentence conduct credit for each two-day period of time served]; *People v. Arevalo* (2018) 20 Cal.App.5th 821, 827, fn. 3 ["because the statutory formula actually awards conduct credits based on every two days served, when the actual time

served is an odd number the resulting conduct credits are the next lower even number"].) In the interest of judicial economy, we will modify the judgment to correct this error.

III

*Striking the First Strike*

Defendant contends that the trial court abused its discretion in declining to strike his first prior strike conviction based on the erroneous assumption that his current crime was a violent felony. Defendant derives this assumption from the trial court's misapplication of section 2933.1, discussed *ante*. However, we find nothing in the record to support defendant's claim. Rather, the court relied on appropriate factors, including defendant's extensive criminal history, to conclude that defendant did not fall outside the Three Strikes sentencing scheme.

In a bifurcated proceeding, the jury found true the special allegations that defendant suffered two prior convictions, one for first degree burglary (§ 459) in May 2014 and one for robbery (§ 211) in July 2020, alleged to be strikes under the Three Strikes law.

At the sentencing hearing, the trial court stated that it had reviewed the probation report. As set forth in the report, in the 10 years before defendant's current crime, he had been convicted of six felonies: second degree burglary (§ 459), participating in a criminal street gang (§ 186.22, subd. (a)), first degree burglary (§ 459), vehicle theft (Veh. Code, § 10851, subd. (a)), failure to appear while on bail (§ 1320.5), and robbery (§ 211). Defendant was also convicted of two misdemeanors: possession of metal knuckles (§ 21810) and being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a)). Defendant had violated probation nine times.

Defendant was on parole at the time of the current crimes. His parole agent stated that his performance on parole was generally unsatisfactory. Defendant refused to enroll in a drug treatment program and had testified positive for cocaine and methamphetamine. Using an expletive, defendant adamantly refused to meet with his probation officer to be

10

interviewed for the presentence report. However, in a previous probation report, defendant stated that he started using drugs at age 12 and had used marijuana, cocaine, heroin, hallucinogenic mushrooms, and methamphetamine. Defendant admitted he had a serious problem with methamphetamine—which he referred to as his "downfall"—but never sought treatment for alcohol or substance abuse. The probation officer performed an online risk assessment, which rated defendant's risk of re-offending as "high violent." The probation report noted that defendant did not show remorse.

At the sentencing hearing, the People argued that the trial court should not exercise its discretion under section 1385 to strike the prior strikes, "given the fact that the strikes are within a series of events that have really no break in time. And, in fact, this last crime was committed while [defendant was] on parole for one of the strikes."

Defense counsel argued that the earlier strike was the "one that actually makes this more than a 20-year sentence–and 20-year sentences are looked [*sic*] with disfavor under the present code. And that doesn't mean you can't impose it, certainly. But it does mean that is not encouraged. I'm asking the Court to consider making this a single strike case by not applying the first strike conviction to these facts."

The trial court ruled: "The Court is aware of its authority to strike the allegations under Penal Code Section 667 [, subdivisions] (d) and (e), and also pursuant to Penal Code Section 1170.12 [, subdivisions] (b) and (c) pursuant to Penal Code Section 1385. However, the Court declines to do so. [¶] This defendant has six adult felony convictions. Two of those convictions were from burglaries and a third was for robbery. The defendant expresses no remorse, and he is clearly a criminal who will continue this pattern of victimization if given the chance."

A trial court has the power to dismiss a strike conviction under section 1385. (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 529-530 (*Romero*). However, an appellate court will not disturb the trial court's ruling absent an abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 375.) An abuse of discretion may occur

11

"where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss." (*Carmony, supra*, at p. 378.) The trial court also abuses its discretion where sentencing under the Three Strikes law, as a matter of law, produces an " ' "arbitrary, capricious or patently absurd" result' under the specific facts of the particular case." (*Ibid.*) Fundamentally, "a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.)

In ruling on whether to strike a prior strike conviction allegation under the Three Strikes law, or in reviewing that ruling, the court must consider whether, in light of the nature and circumstances of the defendant's present felonies and prior strike convictions, his background, character, and prospects, he may be deemed outside the scheme's spirit to the extent that he should be treated as though he had not previously been convicted of one or more strike convictions. (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

Our review of the record discloses that the trial court considered the relevant factors established in *Williams* based on the probation report. Defendant does not contend otherwise but rather asserts that the trial court impliedly relied on the erroneous assumption that defendant had committed a violent crime, as shown by the court's application of section 2933.1 to conduct credits. Defendant's failure to challenge the court's ruling on that basis forfeits his ability to raise the issue on appeal. (See *People v. Scott* (1994) 9 Cal.4th 331, 356.) "Although the court is required to impose sentence in a lawful manner, counsel is charged with understanding, advocating, and clarifying permissible sentencing choices at the hearing." (*Id.* at p. 353.)

Even if the issue were not forfeited, we would find no abuse of discretion because there is nothing in the record—beyond errant speculation—indicating that the trial court relied on the misconception that defendant's current offense was a violent crime as a basis to refuse to strike a prior strike. Indeed, the court's application of section 2933.1 was evidently based entirely on the probation report, which merely cited the statute and

12

listed the number of days of credit under the statute. There was no discussion in the report suggesting that defendant had committed a violent crime. Rather, the probation report referred to the instant burglary as a "serious felony." The trial court in sentencing made no direct or indirect reference to defendant having committed a violent crime. Contrary to defendant's claims, the trial court's decision not to strike defendant's prior strike was not predicated on an erroneous assumption that defendant committed a violent crime. Rather, the court articulated valid reasons—defendant's extensive criminal history and lack of remorse, indicating that he was likely to re-offend "if given the chance"—for declining to strike the prior strike. Accordingly, defendant has not demonstrated the trial court abused its discretion.

## DISPOSITION

The judgment is modified to reflect that defendant earned 441 days of presentence credit, consisting of 221 days of actual custody and 220 days of conduct credits. The trial court is ordered to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

_____\s\_____,
Krause, J.

We concur:

_____\s\_____,
Mauro, Acting P. J.

_____\s\_____,
Mesiwala, J.

13