Filed 9/30/19

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| In re D'ARSEY LAWRENCE BOLTON, | C088774 |
| On Habeas Corpus. | (Super. Ct. No. CCW-3308) |

ORIGINAL PROCEEDING. Petition for writ of habeas corpus. Dawson Arnold, Commissioner. Petition granted.

Diane T. Letarte for Petitioner.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen, Catherine Chatman and R. Todd Marshall, Deputy Attorneys General, for Respondent.

This case presents the previously unaddressed issue of what happens when a prisoner serving a sentence for crimes committed as a juvenile that may exceed his natural lifespan is later convicted of an offense which disqualifies him from the youth offender parole provisions of Penal Code section 3051.[1]

---

[1] Undesignated statutory references are to the Penal Code.

1

While serving a 91-year term for crimes committed when he was 16, petitioner D'Arsey Lawrence Bolton was sentenced under the three strikes law to 25 years to life for a crime committed in prison at the age of 30. In this habeas proceeding, petitioner asserts his sentence violates the cruel and unusual punishment prohibition of the Eighth Amendment and asks us to order the Lassen County Superior Court to resentence him on all of his convictions consistent with the possibility of release in his lifetime, or to find he is not ineligible for youth offender parole. We find that resentencing on the juvenile offenses is necessary, but petitioner's adult sentence does not violate the Eighth Amendment. We shall vacate the 91-year term for the crimes committed as a juvenile and remand for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

### The 1993 Sexual Assaults

Petitioner was born in January 1977.

On December 1, 1993, 10-year-old Jane Doe I left her classroom to run an errand at her Richmond grade school when petitioner asked her to go in the girls' restroom to look for his cousin. Jane I entered the bathroom and left when she found no one inside; petitioner pushed her back in, locked the door, pulled out a knife, and threatened to kill her if she did not shut up. Petitioner forced her to lie down, pulled down her pants, and raped her five or six times, getting up on his knees after each occasion. After the attack concluded, petitioner told her not to tell anyone and left.

Two days later, 12-year-old Jane Doe II's mother dropped her off at her middle school in El Cerrito. Petitioner followed Jane II into the girls' bathroom and began waving a knife. Jane II backed up against a wall; petitioner put down his backpack, pressed the knife against her neck, and then retrieved a gun from his backpack, which she thought was real. Petitioner turned off the lights and told Jane II to lie down, but she refused. After Jane II refused petitioner's second demand to lie down, she either fell or was pushed down. Petitioner sat on Jane II's knees and demanded she pull her pants

2

down. Jane II, who was crying, told him "no." After Jane II refused a second demand that she pull down her pants, petitioner pulled them down with one hand while holding the gun to her neck with the other. Petitioner told Jane II to be quiet after she started to scream and cry, which caused her to scream more loudly. When petitioner threatened to shoot her, she said "fine." Petitioner turned on the lights, put his gun away, and took out the knife, pressing the blade against her neck. After Jane II continued to scream and ignored his commands to shut up, petitioner put away the knife, grabbed his backpack, and left.

Petitioner was convicted in Contra Costa County of five counts of rape, two counts of unlawful penetration with a foreign object, two counts of forcible lewd and lascivious conduct on a child, two counts of false imprisonment, one count of attempted rape, and one count of assault with a deadly weapon, along with multiple enhancements for being armed with and using a knife and pellet pistol. He was sentenced to 92 years in state prison, which was modified to 91 years on appeal.

### *The Prison Crime*

Some 13 years later, when petitioner was 30 years old, a correctional officer at High Desert State Prison searched the cell petitioner occupied with another inmate. A black metal object with a sharpened blade with a white cloth wrapped around one end was found in a soup packet in the top bunk. An officer contacted petitioner and asked him if he knew why he was being interviewed. Petitioner replied that it was probably because of the weapon in his soups. He accurately described the weapon as consisting of black metal with silver edges, six to seven inches long, about one-half inch wide, with a piece of torn white sheet wrapped around the handle. Petitioner claimed he needed it for self-protection.

Following a jury trial, petitioner was convicted of possession of a sharp instrument in prison. He admitted 11 strike allegations and was sentenced to 25 years to life under the three strikes law. (§ 667, subd. (b).) On appeal, a panel of this court found he was

3

not properly admonished before admitting the strikes, reversed the strike findings, and remanded for additional proceedings. Petitioner admitted the strikes on remand and the trial court reimposed the 25-year-to-life term.

### *Collateral Proceedings*

Petitioner filed a petition for writ of habeas corpus in Lassen County Superior Court on April 18, 2013. The petition asserted there was perjury and no proof beyond a reasonable doubt in the weapon possession case, trial counsel was ineffective, and petitioner was entitled to resentencing under section 1170.126. The habeas petition was denied on the merits on June 28, 2013.

On December 9, 2013, petitioner filed a petition for writ of habeas corpus raising similar issues in the California Supreme Court, which denied the petition on February 19, 2014. Petitioner filed another petition for writ of habeas corpus in Lassen County Superior Court, this time attacking his sentence. On April 20, 2015, the trial court denied the petition, finding petitioner was not a youth offender when he committed the possession offense, which offense had nothing to do with the length of the term imposed in the Contra Costa County case. Petitioner then filed a petition for writ of habeas corpus in this court, which we denied on the merits to the extent it attacked the Lassen County conviction and, to the extent it attacked his sentence in the Contra Costa County case, it was denied without prejudice to filing a habeas petition in that court.

Following our denial, petitioner filed a petition for writ of habeas corpus in the California Supreme Court, which, after informal briefing, issued an order to show cause returnable to this court on January 23, 2019.

## DISCUSSION

### 1.0 Relevant Eighth Amendment Jurisprudence

Petitioner's claim is based on the Eighth Amendment's prohibition against cruel and unusual punishment. This right protects persons from excessive punishment, so that a sanction for criminal behavior is graduated and proportional to the severity of the

4

offense.  (*Atkins v. Virginia* (2002) 536 U.S. 304, 311 [153 L.Ed.2d 335, 343-344].)  One aspect of the Eighth Amendment's proportionality guarantee is to examine not just the nature of the crime but that of the convicted criminal as well.  Thus, the Eighth Amendment prohibits application of the death penalty to mentally disabled persons (*Atkins v. Virginia, supra*, at p. 321) and to juveniles (*Roper v. Simmons* (2005) 543 U.S. 551, 568 [161 L.Ed.2d 1, 21]).

The proportionality guarantee has been extended to restrict noncapital sentences imposed on juvenile criminals.  Since juveniles are less culpable and more amenable to reform, they are not as deserving of the most significant punishments.  (*Miller v. Alabama* (2012) 567 U.S. 460, 471 [183 L.Ed.2d 407, 418] (*Miller*); *Graham v. Florida* (2010) 560 U.S. 48, 68 [176 L.Ed.2d 825, 841] (*Graham*).)  Accordingly, the Eighth Amendment forbids a juvenile who commits an offense other than a homicide from being sentenced to life without the possibility of parole (LWOP) (*Graham*, at p. 74) and forbids the automatic imposition of life without parole on juveniles in homicide cases (*Miller*, at p. 465).  These are substantive rules of constitutional law which apply retroactively to cases already decided when the new rule was announced.  (*Montgomery v. Louisiana* (2016) 577 U.S. __, __ [193 L.Ed.2d 599, 619-620].)

The development of this Eighth Amendment jurisprudence led to significant legislative and judicial responses in this state.  The Legislature responded by enacting an early parole provision for prisoners serving long terms for crimes committed when they were young.  A person who committed a crime when he or she was 25 years of age or younger is eligible for parole after 15 years if serving a determinate term, after 20 years if serving a life term less than 25 years to life, and after 25 years if serving a term of 25 years to life or if the person was sentenced to life without parole for a crime committed as a juvenile.  (§ 3051, subd. (b)(1)-(4).)  The possibility of youth offender parole under section 3051 moots any Eighth Amendment challenge to a lengthy noncapital sentence for a juvenile offense.  (*People v. Franklin* (2016) 63 Cal.4th 261, 280.)  Section 3051

5

parole is not available to every youth offender. As relevant here, a person who is sentenced under the three strikes law, or is subsequently sentenced to life for a crime committed after turning 26 years old is disqualified from section 3051 parole. (§ 3051, subd. (h).)

The California Supreme Court responded to this developing body of law by applying it to situations not squarely within the fact patterns presented in *Miller* or *Graham*. In *People v. Caballero* (2012) 55 Cal.4th 262 (*Caballero*), our Supreme Court held, "sentencing a juvenile offender for a nonhomicide offense to a term of years with a parole eligibility date that falls outside the juvenile offender's natural life expectancy," i.e., the "functional equivalent" of an LWOP sentence, "constitutes cruel and unusual punishment in violation of the Eighth Amendment." (*Id*. at p. 268.) While the juvenile offender may be incarcerated for the rest of his or her natural life, "the state may not deprive them at sentencing of a meaningful opportunity to demonstrate their rehabilitation and fitness to reenter society in the future." (*Ibid*.)

*People v. Contreras* (2018) 4 Cal.5th 349 (*Contreras*) involved two defendants who were sentenced respectively to 50 years to life and 58 years to life for crimes they committed when they were 16 years old. (*Id.* at p. 356.) Since they were sentenced under the one strike law, they were ineligible for parole under section 3051, subdivision (h), so their Eighth Amendment claims were not moot. (*Contreras*, at p. 359.) In *Caballero*, a sentence of 110 years was found to be the equivalent of life without parole. (*Contreras*, at p. 360; *Caballero, supra*, 55 Cal.4th at p. 268.) The question in *Contreras* was whether the sentences of 50 years to life and 58 years to life were also functionally equivalent to life without parole. (*Contreras*, at p. 360.)

The *Contreras* court rejected the Attorney General's claim that *Caballero* held that a term of years does not violate the Eighth Amendment if parole is possible during some point in the juvenile offender's natural life expectancy. (*Contreras, supra*, 4 Cal.5th at p. 361.) The Attorney General advocated an actuarial approach, whereby the

6

sentence did not violate the Eighth Amendment if the juvenile offender was eligible for parole during his or her expected lifespan as determined actuarially. (*Contreras*, at pp. 360-361.) The Supreme Court rejected the argument. (*Id*. at p. 361.) In addition to raising "a tangle of legal and empirical difficulties" (*ibid*.), the Attorney General's approach failed in a more fundamental way.

"But the issue of functional equivalence in this context is not limited to determining whether a term-of-years sentence is actuarially equivalent to LWOP. Although the Attorney General trains his inquiry on that question, there is a separate and distinct question whether a lengthy term-of-years sentence, though not clearly exceeding a juvenile offender's natural lifespan, may nonetheless impinge on the same substantive concerns that make the imposition of LWOP on juvenile nonhomicide offenders impermissible under the Eighth Amendment. This latter notion of functional equivalence—that a term-of-years sentence may function like LWOP *with respect to the Eighth Amendment concerns that constrain lawful punishment for juvenile nonhomicide offenders—*is what we must address in this case." (*Contreras, supra*, 4 Cal.5th at p. 364.)

The Eighth Amendment did not prohibit long sentences for juveniles convicted of serious offenses. (*Contreras, supra*, 4 Cal.5th at p. 367.) However, a juvenile sentence "must recognize 'a juvenile nonhomicide offender's capacity for change and limited moral culpability.' " (*Ibid.*, quoting *Graham, supra*, 560 U.S. at p. 74.) The sentence must give the juvenile offender the chance to " 'achieve maturity of judgment and self-recognition of human worth and potential,' " and offer "an 'incentive to become a responsible individual.' " (*Contreras*, at p. 367, quoting *Graham, supra*, 560 U.S. at p. 79.)

The Supreme Court found a term of years imposed on a juvenile offender does not satisfy the Eighth Amendment merely by allowing the possibility of parole at some point during the offender's lifetime. (*Contreras, supra*, 4 Cal.5th at p. 368.) In accordance with *Graham*, a sentence should "enable a juvenile offender to hold a job or otherwise

7

participate as a productive member of society if released." (*Ibid.*) Forbidding release until late in life "seems unlikely to allow for the reintegration that *Graham* contemplates." (*Ibid.*) A juvenile who must serve a term until near the end of his or her life also had little incentive to become a more responsible person, contrary to *Graham's* mandate. (*Id.* at pp. 368-369.) Finding "a sentence of 50 years to life imprisonment bears an attenuated relationship to legitimate penological goals under the reasoning of *Graham*," the *Contreras* court concluded that this sentence was the functional equivalent to life without parole. (*Id.* at p. 369.)

While legislation passed after oral argument in *Contreras* rendered a prisoner over the age of 60 eligible for parole after serving a term of 25 years (*Contreras, supra*, 4 Cal.5th at pp. 373-374; see § 3055, subd. (a) [establishing the "Elderly Parole Program," effective Jan. 1, 2018]), *Contreras* left for the lower courts to address the "novel and substantial" issues raised by the possibility of elderly parole for juvenile offenders.[2] (*Contreras*, at p. 378.) Nor was the Supreme Court persuaded by the fact that good conduct credits could allow the defendants to become eligible for parole at the respective ages of 57 and 64 for the two defendants. (*Ibid.*) "But the record before us contains no information on how likely it is that an inmate can achieve a spotless prison record over a span of four or more decades. Nor is it clear that *Graham's* requirement of a 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation' [citation] would be satisfied by a parole eligibility date that is contingent upon a perfect or near-perfect record in prison. [Citation.] As with elderly parole, we

---

[2] The "novel and substantial" issues identified by the Supreme Court were whether the decision to grant elderly parole took into consideration the same factors as ordinary parole, whether the possibility of parole at age 60 or older satisfied *Graham*, and whether having a juvenile offender wait longer for parole than an adult offender was contrary to the holdings in *Graham* and *Roper* that juveniles were less culpable than adult offenders. (*Contreras, supra*, 4 Cal.5th at pp. 377-378.)

leave these novel issues for the lower courts to address in the first instance." (*Id.* at p. 379.)

The Supreme Court concluded the defendants' sentences violated the Eighth Amendment as defined in *Graham*. (*Contreras, supra*, 4 Cal.5th at p. 379.) It affirmed the Court of Appeal's decision vacating the sentences and remanded for resentencing with this directive: "The sentencing court is directed to consider, in light of this opinion, any mitigating circumstances of defendants' crimes and lives, and the impact of any new legislation and regulations on appropriate sentencing. The sentencing court is further directed to impose a time by which defendants may seek parole, consistent with this opinion." (*Ibid*.) The Supreme Court did not provide further guidance to the trial court or other lower courts, finding "it prudent to follow a 'cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more.' [Citation.]" (*Id*. at p. 381.) Prudence was particularly appropriate where legislation can and had determined issues in this area, such as section 3051, which mooted many Eighth Amendment claims of juvenile offenders. (*Contreras*, at pp. 381-382.) For similar reasons, the Supreme Court also declined to address the constitutionality of prohibiting one strike offenders from youth offender parole while permitting it for even the most aggravated murders. (*Id.* at p. 382.)

**2.0    No Procedural Bar to the Petition**

The Attorney General asserts the petition is procedurally barred because it is untimely and successive.

Successive or untimely petitions for writ of habeas corpus relief are summarily denied absent justification. (*In re Clark* (1993) 5 Cal.4th 750, 759, 797.) One justification is an intervening change in the law: "[C]laims which are based on a change in the law which is retroactively applicable to final judgments will be considered if promptly asserted and if application of the former rule is shown to have been prejudicial." (*Id.* at p. 775.)

9

While petitioner's first habeas petition was filed in 2013 after *Caballero*, *Miller*, and *Graham* were decided, both it, the second petition in the trial court, and the initial petition in this court were filed *before Contreras*. *Contreras* extends *Graham*, applying its rule to a sentence that theoretically allowed for parole before the end of the juvenile offender's lifespan. It also applied the Eighth Amendment jurisprudence to sentences where the defendants were ineligible for youth offender parole. Since the *Miller* line of cases involve substantive new rules that are to be applied retroactively, *Contreras* is likewise a change in the law retroactively applicable to final judgments and therefore good cause for considering the merits of the habeas petition.

### 3.0    Petitioner's Resentencing

Petitioner asserts *Contreras* is factually analogous to his case. He notes that both he and the defendants in *Contreras* were 16 when they committed their crimes. He claims the 91-year sentence for his juvenile offenses was arguably more severe than the sentences at issue in *Contreras*, and, like the defendants in that case, he is ineligible for section 3051 parole. Petitioner concludes his entire sentence should be vacated, and he should be resentenced to a term allowing for the possibility of release within his lifetime, consistent with *Contreras* and the other Eighth Amendment cases.

We partially agree with petitioner's analogy to *Contreras*. His Eighth Amendment claims are not mooted since the 25-year-to-life term under the three strikes law for a crime committed when he was 30 renders petitioner ineligible for section 3051 parole. (See § 3051, subd. (h).) The 91-year term for the juvenile offenses, if fully served, would keep petitioner in prison for the rest of his life for crimes he committed as a juvenile, a violation of the Eighth Amendment. Like the Supreme Court in *Contreras*, we are not persuaded in this case by the Attorney General's claim that petitioner's sentence is not the functional equivalent of life without parole in light of the availability of credits to reduce the term. The Attorney General notes that petitioner has earned credits during some but not all of his time in prison, and is currently scheduled to finish his juvenile

10

term on January 7, 2042, a few weeks shy of his 65th birthday. The Eighth Amendment guarantees a juvenile offender who has not committed a homicide the possibility of parole so that the juvenile offender can meaningfully participate in the community by means such as gaining employment. The age of 65, at which many people have retired, and people generally are eligible for social security retirement benefits, is too old for a juvenile offender to rejoin the community in the manner contemplated in *Graham* and *Contreras*. Even if this was an appropriate age, as in *Contreras*, the Attorney General's argument is too speculative, as it presumes petitioner will achieve this release by earning all available credits.[3] Applying *Contreras*, we conclude the 91-year term for petitioner's juvenile crimes violates the Eighth Amendment.

Resentencing in this case presents a situation not found in *Contreras* or *Caballero*, as those cases did not involve sentences for both adult and juvenile offenses. Since the sentences in *Contreras* and *Caballero* were entirely unconstitutional, the disposition was straightforward: reverse the sentences and remand for resentencing in light of the Supreme Court's opinion and any intervening relevant legislative enactments; on remand the trial court was to set an appropriate parole date in light of the relevant Eighth Amendment principles. (See *Contreras, supra*, 4 Cal.5th at p. 383; *Caballero, supra*, 55 Cal.4th at pp. 268-269.)

The question presented here is what to do with petitioner's adult conviction and sentence. Petitioner claims the sentence for his adult conviction must be taken into consideration when the trial court resentences the juvenile offenses to avoid violating the Eighth Amendment. He proposes imposing a sentence of less than life for the adult crime so that he is eligible for section 3051 parole. Thus, the trial court could strike all but one

---

[3] Since the Attorney General does not assert the possibility of elderly parole and there is nothing in the record regarding its application, we decline to address the issue and leave any analysis of this issue, if necessary, to the trial court on remand.

11

of his strike priors, resentence him to eight years on the adult offense, for a total term of 99 years, leaving him eligible for section 3051 parole after serving 15 years of his term.[4] We are not persuaded.

The Eighth Amendment proportionality guarantee applies very differently to prison terms for adult offenders. The Eighth Amendment's proportionality principle is narrow in this context. (*Ewing v. California* (2003) 538 U.S. 11, 20 [155 L.Ed.2d 108, 117].) It " 'does not require strict proportionality between crime and sentence,' " but prohibits " 'extreme sentences that are "grossly disproportionate" to the crime.' [Citation.]" (*Id.* at p. 23.) Applying these principles, three strikes sentences for less serious felonies have been routinely upheld against Eighth Amendment attack. (See, e.g., *id.* at pp. 30-31 [grand theft]; *People v. Martinez* (1999) 71 Cal.App.4th 1502, 1506-1507 [possession of methamphetamine and resisting an officer]; *People v. Cooper* (1996) 43 Cal.App.4th 815, 819 [felon in possession of a firearm].)

Contrary to petitioner's arguments, his crime of possessing a sharp instrument in prison is not a mere "prison rule violation." It is a felony that renders him ineligible for section 3051 parole only because he committed it when he was older than 26 and because his numerous strikes subjected him to a three strikes sentence. (§ 3051, subd. (h).) That sentence was not attacked by petitioner in his appeal from the Lassen County conviction and was subjected to an unsuccessful motion to strike on remand. Since petitioner was armed in the commission of the possession of a sharp instrument offense, he was ineligible for resentencing pursuant to Proposition 36. (See §§ 1170.126, subd. (e)(2), 667, subd. (e)(2)(C)(iii).) *Miller*, *Graham*, *Caballero*, and *Contreras* address only sentences imposed for juvenile offenders. As our analysis of them shows, their holdings

---

[4] Petitioner is wrong in asserting he would be eligible for parole after 25 years in this scenario. Since petitioner's new sentence would be for a determinate term, he would be eligible for parole after serving 15 years. (§ 3051, subd. (b)(1).)

are derived from the differences between juvenile and adult offenders, particularly the juvenile's diminished culpability and greater capacity for reform. Those factors are absent when the offender is an adult. The sentence for petitioner's adult offense does not violate the Eighth Amendment and is not subject to resentencing on remand.

There is an additional reason to reject petitioner's claim regarding the three strikes term for his adult crime. *Contreras* found disqualifying juvenile one strike offenders from section 3051 parole raised colorable equal protection and unusual punishment (see Cal. Const., art. I, § 17) issues. (*Contreras, supra*, 4 Cal.5th at p. 382.) Since petitioner's disqualification is based on an adult offense, and one committed when he was 30 years old, the same considerations that render his adult sentence constitutional also eliminate any colorable constitutional claim regarding his ineligibility for section 3051 parole. Accepting petitioner's claim regarding this exception to section 3051 is not required by the state or federal Constitutions, would contravene the three strikes law, and would effectively nullify part of section 3051. None of those results are acceptable, and we decline petitioner's invitation to do so.

Petitioner cites to *In re Williams* (2018) 24 Cal.App.5th 794 (*Williams*) in support of his claim for resentencing on the adult conviction. The petitioner in that case was convicted of first degree murder as a juvenile and sentenced to 28 years to life; while serving his sentence, he was convicted of battery on a noninmate and sentenced to a consecutive eight-year term, to be served after the completion of the life term, pursuant to section 1170.1, subdivision (c). (*Williams*, at pp. 796-797.) The petitioner in *Williams* was eligible for section 3051 parole, which the Board of Parole Hearings granted subject to the petitioner first completing the eight-year term for the crime committed in prison. (*Williams*, at p. 796.) The Court of Appeal found that requiring the petitioner to serve the extra term was unlawful and granted the habeas petition. (*Ibid.*)

The issue in *Williams* was "whether a youth offender granted parole under section 3051 is required to serve a consecutive sentence for an in-prison offense committed after

13

age 25." (*Williams, supra*, 24 Cal.App.5th at p. 797.) *Williams* relied on another case addressing this same issue, *In re Trejo* (2017) 10 Cal.App.5th 972. (*Williams*, at p. 799.) *Trejo* "found that section 3051 applies to offenses committed before a youth offender is incarcerated as well as offenses committed by a youth offender in prison." (*Williams*, at p. 800; see *Trejo*, at p. 984.) The *Williams* court also agreed with *Trejo* that exceptions to section 3051 were limited to those stated in the statute, and section 3051 supplanted section 1170.1 for youth offenders. (*Williams*, at pp. 801-802; *Trejo*, at pp. 985, 988.) Applying *Trejo*, the *Williams* court also found that granting the petition would not create a windfall for the petitioner as the parole board would already consider the offense committed in prison when determining whether to grant parole. (*Williams*, at p. 802; *Trejo*, at p. 988.) *Williams* concluded that a contrary interpretation "raises grave constitutional concerns," namely that offenders like Williams would be denied "the meaningful opportunity to obtain release from prison required in *Franklin,* an opportunity that allows a proper balance in sentencing that is consistent with the constitutional limits prescribed by the United States Supreme Court and the California Supreme Court." (*Williams*, at pp. 803-804.)

Williams and *Trejo* are factually distinguishable from this case, as petitioner's adult conviction disqualifies him from section 3051. We are nonetheless mindful of *Williams*' finding regarding allowing a juvenile offender the meaningful opportunity to earn parole. Petitioner's adult conviction disqualifies him from section 3051 relief, but it does not override the Eighth Amendment as it applies to his juvenile convictions. A person sentenced for convictions in multiple cases receives a single sentence. (§ 1170.1, subd. (a).) While the trial court cannot modify the three strikes sentence for petitioner's adult conviction, it may take the conviction into account when determining the proper terms for the juvenile crimes.

The Supreme Court did not mandate a particular term that the defendants were to receive on remand in *Contreras* and *Caballero*. (See *Contreras, supra*, 4 Cal.5th at

p. 381 [declining to provide additional guidance for trial court on remand]; *Caballero, supra*, 55 Cal.4th at p. 269 ["Because every case will be different, we will not provide trial courts with a precise timeframe for setting these future parole hearings in a nonhomicide case. However, the sentence must not violate the defendant's Eighth Amendment rights and must provide him or her a 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation' under *Graham's* mandate"].)

The issue of whether a person who committed one or more crimes as a juvenile and then commits one or more crimes as an adult can be constitutionally sentenced to a total term that does not provide for a meaningful opportunity for parole was not presented in *Miller*, *Graham*, *Caballero*, or *Contreras*. Although *Williams* recognized a potentially serious constitutional issue with depriving a prisoner of a meaningful opportunity for parole based on an adult offense, it declined to ultimately resolve the issue, and the issue was framed in the different context of a prisoner found suitable for section 3051 release. In declining to provide additional guidance for the trial court on remand, the Supreme Court in *Contreras* found "it prudent to follow a 'cardinal principle of judicial restraint— if it is not necessary to decide more, it is necessary not to decide more.' [Citation.]" (*Contreras, supra*, 4 Cal.5th at p. 381.) We take the same approach here.

Since petitioner has never been sentenced by a court that had the advantage of the Eighth Amendment cases discussed in this opinion, the better approach is to wait until he is sentenced by such a court before determining novel and important constitutional issues related to his sentence. Accordingly, while the trial court must take the 25-year-to-life term for petitioner's adult conviction into account when resentencing on the juvenile offenses, we take no position on whether the total sentence for both the adult and juvenile convictions must include a meaningful opportunity for parole as defined in *Miller*, *Graham*, *Caballero*, or *Contreras*. Likewise, if the trial court determines petitioner's total term must include a meaningful opportunity for parole, we leave it to the trial court

15

to make the initial determination regarding what sentence satisfies this requirement, and the effect, if any, on the availability of elderly parole.

## DISPOSITION

The Lassen County Superior Court is directed to vacate petitioner's 91-year state prison term for his juvenile offenses and to hold a sentencing hearing on his juvenile and adult convictions consistent with this opinion.


           BUTZ           , Acting P. J.


We concur:


       HOCH         , J.


       KRAUSE       , J.